TOLEDO, ST. LOUIS & KANSAS CITY RAILROAD COMPANY

V.

ROSANNA BAILEY, ADMINISTRATRIX.

*Master and Servant—Negligence of Master—Machinery—Defects in—Notice.*

1. It is a question of fact for the jury to determine in a personal injury case whether or not the person injured knew at the time he went to work at the machine at which he was working when killed that it was defective and unsafe, and with such knowledge, voluntarily incurred the peril of operating it, and whether or not he was in the exercise of ordinary care for his own safety at the time of the injury.

2. In such case, evidence going to show that the defendant's employes regarded the same to be unsafe, is admissible.

3. In an action brought by the administratrix of a railroad employe to recover for his death, the same being alleged to have been caused through its negligence in placing him at work with a defective engine, this court declines, in view of the evidence, to interfere with the judgment for the plaintiff.

4. The antecedents of a witness are a proper subject-matter of inquiry upon cross-examination, and a ruling allowing such cross-examination, but disallowing undue prolixity, is proper.

[Opinion filed June 21, 1892.]

APPEAL from the Circuit Court of St. Clair County; the Hon. B. R. BURROUGHS, Judge, presiding.

Messrs. H. A. Neal, Messick & Rhoads, and Clarence Brown, for appellant.

Messrs. James M. Hay and B. H. Canby, for appellee.

Green, P. J. This action on the case was brought by the administratrix of the deceased Barrett's estate under the statute to recover damages for his death alleged to have resulted from appellant's negligence. A verdict against appellant was returned for $3,000 damages. Judgment for this sum and costs of suit was entered, and the defendant took this appeal. The negligence charged in plaintiff's declaration is, " that defendant carelessly and negligently furnished an engine that was old, worn out, insecure and wholly unfit for use; that the boiler was defective, the iron being weak and much deteriorated in strength; that the boiler was corroded and crystalized about the seams, and in other places; the flues therein were defective and in bad and unsafe condition, and the boiler leaky; that the rods in said boiler were old, rusty, and some of them broken, and the nuts gone; that the safety valves regulating the pressure of steam on said boiler and the escape thereof were out of order, and would not perform their functions, and the steam gauge on said locomotive was defective and would not register and indicate the amount of steam pressure on said boiler; that while Michael Barrett was driving said engine with all due care, said engine by reason of said defects and imperfections exploded, killing said Barrett; that he left him surviving two daughters under the age of eighteen years. The deceased, Michael Barrett, during the three or four months next preceding his death was employed by appellant as night hostler; his duty was to attend to the engines, put them in the round house and have them ready when called for, so far as firing up and putting water in the boiler was concerned. In the early part of September, 1890, his employment was changed to that of machinist helper, and if needed it was his duty to act as an extra engineer. On the 13th of said month, Neff, the regular engineer in charge of appellant's engine No. 95, and running it during the morning of that day,

did not wish to work in the afternoon and so informed Riegel, the foreman in charge of engineers. Riegel thereupon directed Barrett to take said engine and run it during the afternoon. In obedience to this order the latter took the engine after dinner, ran it for about an hour and a half, when the boiler exploded, and thereby Barrett was so injured that death resulted. Barrett left him surviving two daughters, both minors, dependent upon him for support. Several grounds for reversal are presented and insisted upon on behalf of appellant. First, that the proof does not establish the following facts essential to the maintenance of this suit, viz.: The defective condition of the boiler and appliances substantially as averred, and injury resulting by reason thereof. Notice to defendant, actual or constructive, of such defective condition, and that deceased was in the exercise of ordinary care as averred. If the jury believed the testimony of McAdoo, Shaw, Harrigan, James Clavin, Michael Clavin, Eugene Wright and Charles McGlynn, the proof was sufficient to support the material averments that engine No. 95 was insecure, much worn, and in bad repair, the boiler leaky, that the safety valves regulating the steam pressure and designed to let the steam escape when it exceeded the amount that might be safely employed would not work and were practically useless, the steam gauge was out of order, many of the stay bolts attached to the boiler had been broken off for quite a length of time, the injectors were in bad order and would not inject water into the boiler; in short, the evidence on behalf of plaintiff clearly established the fact that defendant was guilty of culpable negligence in furnishing an engine, boiler and appliances unsafe and unfit for use and directing the deceased to operate the same. If in connection with this evidence the evidence for the defendant is considered, a conflict arises, but in our judgment even then the weight of the testimony supports the charge of negligence as averred. There is also evidence to show both constructive and actual notice to defendant of the defective condition of engine No. 95. It had been in such condition during so long a time that Riegel, defendant's servant, whose duty it was to examine it and look after machinery

and the repair thereof, must have known, had he exercised ordinary care, that it was unsafe and unfit for use. He was also notified of these defects, if the testimony of several witnesses for plaintiff is to be believed. It was a question of fact for the jury to determine from the evidence whether or not the deceased knew at the time he took the engine in obedience to Reigel's order that it was defective and unsafe, and with such knowledge voluntarily incurred the peril of operating it, and whether or not he was in the exercise of ordinary care for his own safety at the time he was injured. It is insisted on behalf of appellant that such knowledge by deceased must be inferred from the fact he worked as night hostler, or as we have before stated, and also operated the engine on several occasions, and furthermore, because he admitted such knowledge by saying to Shaw a few days before the explosion, the engine was unsafe because the stop valve (safety valve) was out of order and it would blow up. The duties of deceased as night hostler did not require him to inspect the boiler and appliances and see that they were safe and fit for use, nor in the performance of such duties would he necessarily discover all the defects in the same. The evidence does not show very satisfactorily how often he had operated the engine, or to what extent, before he was killed, and the jury could fairly infer he acquired but little knowledge of its defect in that manner. His remark to witness Shaw a short time before his death also indicated the only defects he was aware of were in the safety valve and steam gauge, and after he had said this and before he took charge of the engine by Reigel's order, Shaw informed him he had remedied these defects the best he could. Deceased had a right to rely on this information, and assume that the engine furnished him was in reasonably safe and fit condition for use. The jury could properly find from the evidence that deceased was not guilty of contributory negligence.

We think also the evidence justifies the conclusion that by reason of the defective safety valve, steam gauge, stay bolts and boiler, the explosion occurred and the death of Barrett resulted. It is said the court erred in admitting the testimony

of Shaw to prove that the employes of defendant in the yard regarded this engine unsafe, and that it was so reputed to be among them.   We suppose this evidence was admitted to show the defective and dangerous condition was so notorious, that defendant's servants having charge of its engines and the keeping of the same in repair knew, or in the exercise of reasonable diligence and precaution ought to have known, that engine No. 95 was not safe.   In cases of this character such evidence has been held to be relevant and proper.   C. & A. R. R. Co. v. Shannon, 43 Ill. 343.   Error is assigned also for the ruling of the court in cross-examination of plaintiff's witness, James Clavin.   We find no reversible error in this.   The antecedents of a witness are a proper subject-matter of inquiry on his cross-examination and the ruling of the court below did not unduly abridge such inquiry, but merely forbids needless prolixity.   No other of the objections made on behalf of appellant to the admission of evidence are tenable.   The first instruction given on behalf of plaintiff is complained of; by it the jury were informed that if they believed from the evidence plaintiff had proven all the material averments of her declaration by a preponderance of the evidence, they should render a verdict for plaintiff; the criticism is that this instruction leaves the jury to determine what are the material averments in the declaration, and thereby decide a question of law. The jury were not misled or misdirected by this instruction. It was given together with six instructions for defendant, fully informing the jury what the material averments were and the necessity of proving all of them before plaintiff would be entitled to recover, and these six instructions state fully and most favorably every legal principle applicable to the facts contained in defendant's refused instructions.   The judgment is affirmed.

*Judgment affirmed.*