[No. 671.   September 1, 1896.]

## TERRITORY OF NEW MEXICO, APPELLEE, v. JOSE CHAVEZ y CHAVEZ, APPELLANT.

CRIMINAL LAW—WITNESSES—ACCOMPLICES—PARDON—CREDIBILITY—IM-PEACHMENT.—Where accomplices, previously convicted of crimes, who had been restored to competency as witnesses by pardon, appeared for the prosecution, the court erred in refusing to permit them to state, on cross-examination, the nature of and facts in connection with such crimes of which they had been convicted, in order to impeach their credibility; and in ruling as to one of such witnesses that, if it should appear that the witness had been useful in discovering the crime, it would be no reason for the court to depart from "fundamental principles of law, as it appreciates them," as implying in the opinion of the judge it was truthful testimony.

ID.—ACCOMPLICES—PARDON—INDUCEMENTS TO TESTIFY.—The court also erred in excluding evidence as to the liberty and favor granted such witnesses by the prosecution notwithstanding their conviction for such crimes, and in confining the inquiries to whether the inducements had been offered by persons having authority. The jury should have been instructed that they must consider the inducements under which such testimony was offered.

APPEAL, from a judgment of conviction for murder, from the Fourth Judicial District Court, San Miguel county.   Reversed and remanded.

The facts are stated in the opinion of the court.

VEEDER & VEEDER for appellant.

While a pardon will restore to a convicted felon the right to testify in any case, it will not restore his moral character, and give a new credit to his statements under oath, and the fact of such conviction, the crime for which he has been convicted, and the time he has served in the penitentiary may be brought out on cross-examination for the purpose of impeaching his credibility.   Comp. Laws 1884, sec. 2086; Whar. Crim. Ev., secs. 363, 489, note 10; Real v. People, 42 N. Y. 270.

All the questions put by counsel for defendant to the witnesses, Caballero, Trujillo and Baca, on cross-examination, as bearing upon their credibility, and excluded by the court, were competent and should have been answered.   1 Thomp. on Trials, secs. 459, 460; 1 Greenlf. Ev. [14 Ed.], sec. 455; Whar. Crim. Ev., sec. 444; Wilbur v. Flood, 16 Mich. 40; Pitcher v. People, Id. 142; State v. Kent, 62 N. W. Rep. 631; People v. Hare, 24 Id. 843; Foster v. People, 18 Mich. 265; State v. Miller, 13 S. W. Rep. 832; Real v. People, supra; 29 Am. and Eng. Ency. Law, 674; State v. Martin, 28 S. W. Rep. 12.

"The test of whether a fact inquired of on cross-examination is collateral is this: Would the cross-examining party be entitled to prove it as a part of his case." When applying this test it must clearly appear that this whole line of cross-examination of defendant was collateral and immaterial.   Whar. Crim. Ev., sec. 484; 1 Thomp. on Trials, sec. 470; 1 Greenlf. Ev. [14 Ed.], sec. 449; Rapal. Crim. Proc., sec. 311; Stokes v.

People, 53 N. Y. 164; People v. Webb, 11 Pa. 509; 29 Am. & Eng. Ency. Law, 793; Railroad Co. v. Reese, 56 Fed. Rep. 288; Carter v. State, 54 N. W. Rep. 852; Randolph v. Comm.. 11 S. W. Rep. 813; People v. Hillhouse, 45 N. W. Rep. 484.

JOHN P. VICTORY, solicitor general, for the territory.

The court did not err in limiting the cross-examination of witnesses for the territory by the defendant, and in not permitting defendant to question such witnesses upon collateral and independent facts for the purpose of affecting their credibility. Marks v. Hilsendeger, 46 Mich. 336; Bissell v. Starr, 32 Id. 299; 1 Thomp. on Trials, sec. 461.

Nor will such cross-examination be allowed for the purpose of impeaching them by contradiction. Clinton v. State, 33 Ohio St. 27; People v. Devine, 44 Cal. 452; Hester v. Comm., 85 Pa. St. 139; 1 Thomp. on Trials, sec. 469.

The extent to which such cross-examination should go, in all cases, rests in the sound discretion of the trial court, and the decision of the court, in the exercise of such discretion, is not subject to review. Storm v. U. S., 94 U. S. 76; State v. Rollins, 77 Me. 380; 1 Thomp. on Trials, sec. 464. See, also, Graham v. Davis, 4 Ohio St. 362; Blake v. Powell, 26 Kan. 320; Walker v. Walker, 14 Ga. 242; 1 Thomp. on Trials, 343.

The court properly refused the instructions offered by defendant upon the other points raised by appellant. Thomp. on Trials, sec. 2352; State v. Miller, 67 Mo. 604; Laber v. Cooper, 7 Wall. 565; R. R. v. Horst, 93 U. S. 291.

BANTZ, J.—The defendant was convicted in San Miguel county for the murder of Gabriel Sandoval and sentenced to death, and the cause is brought here on appeal.

It is claimed for the accused that the only witnesses whose testimony directly connected the defendant with the crime charged are accomplices in the crime. The credit to be given to their testimony was therefore of the highest importance. To shake that credit it was sought, on cross-examination of each of such accomplices, to show that he had a past history for criminal actions, which, if exposed, would have had a material influence upon the weight to be given his testimony by the jury. It is claimed that the right to so cross-examine was denied, and that the court committed error in so doing.

The attack upon the credit of a witness must ordinarily be confined to proof of general reputation, and specific acts may not be shown, unless relating to the interest, bias or prejudice of the witness. But according to the more modern American cases the attack may also be made on cross-examination, in which the witness may be required to disclose matters in his own history, provided they clearly affect his credibility, even though they may tend to disgrace him. See, also, opinion of Lord ELDON in Parkhurst v. Louten, 2 Swan. p. 216. The latitude of such cross-examination is to enable the jury to understand the character of the witness they are called upon to believe. It is to be presumed that the witness will protect himself as far at least as the truth will permit, and no one can know better the favorable circumstances. The answers thus given upon such collateral matters can not of course be contradicted. Upon these general propositions see LeBean v. People, 34 N. Y. 223; Stokes v. People, 53 N. Y. 164; Beebe v. Knapp, 16 Mich. 54, and note; U. S. v. Wood, 33 Pac. Rep. 59; State v. Miller, 13 S. W. Rep. (Mo.) 832; 1 Greenl. Ev. 455; Whart. Crim. Ev., sec. 476. The extent to which cross-examination will be permitted is in no doubt in a large measure in the discretion of the trial court; and

it is difficult to draw the line as to where the legal discretion as to the admission or the exclusion of such testimony commences, and where it ends. The truth is the thing to be sought. Assaults upon a witness by cross-examination into collateral matters can not be allowed to gratify the caprice or the displeasure of those against whom he testifies; and intrusions into private affairs which are calculated merely to wound the feelings, humiliate or embarrass the witness, will not be permitted. Ephland v. Mo. Pac. R. Co., 57 Mo. 147; 1 Greenl. Ev., secs. 455-461. As was said by Mr. WHARTON, "if witnesses were to be compelled to answer fishing questions as to any scandals in their past lives, the witness box would become itself a scandal which no civilized community would tolerate." Whart. Crim. Ev., sec. 472. But a clear distinction is to be taken between those matters called for on cross-examination which merely excite prejudice against the witness or tend to humiliate him or wound his feelings, and those matters on the other hand which are calculated in an important and material respect to influence the credit to be given to his testimony. As to the latter class the witness can not be shielded from disclosing his own character on cross-examination, and for this purpose he may be interrogated upon specific acts and transactions of his past life, and if they are not too remote in time and clearly relate to the credit of the witness in an important and material respect it would be error to exclude them. Greenl. Ev., 455-461; Whart. Crim. Ev., sec. 476; Steph. Dig. Ev. How far justice may require such examinations to go, how much time should be spent upon them, what should be excluded for remoteness of time, and what for being trivial or unimportant, must depend in some measure upon the circumstances of each case. Watson v. Trombly, 60 N. H. 491; and these are questions addressed primarily to the discretion of the trial court, but the

discretion should be liberally exercised. Real v. People, 42 N. Y. 282.

The latitude in cross-examinations is particularly necessary where spies, informers, and accomplices are used as witnesses, otherwise the life of the person on trial must often be wrongfully endangered. Phil. & Am. Ev., 917; 2 Phil. Ev., 422. Whether the facts showing the infamous or disgraceful record of the witness be drawn from a stranger who comes forward unexpectedly to deliver material testimony, or is drawn from one, though known to the parties, may be unknown to the jury or some of them, there is no other way of discovering his credibility to the jury, unless perchance his character should be so utterly bad and publicly known as to furnish means of attack as to general reputation. Wilbur v. Flood, 16 Mich. 43.

With these general statements we will now examine the record upon this subject. Guadalupe Cabellero and Julian Trujillo were, if their testimony is to be believed, accomplices and co-conspirators WITNESSES: accomplices: pardon: credibility: impeachment. with the defendant in the assassination of Gabriel Sandoval and were called as witnesses against him, together with one Manuel Gonzales y Baca, who testified as to defendant's admissions in regard to his flight from Las Vegas after the discovery of the body of the murdered man. It was shown, upon examination of these men upon the voir dire, that they had been convicted of crime and sent to the penitentiary. Their pardons were then produced by the prosecution. These pardons operated to restore them to competency as witnesses, but did not restore their credit. It (the pardon) removes the disability, but does not change the common law principle, that the conviction of an infamous offense is evidence of bad character for truth. The general character of a person bad enough to destroy his competency as a witness, must be bad enough to affect his credibility, when

his competency is restored by the executive," etc. Curtis v. Cochran, 50 N. H. 244. It further appears that the witness Cabellero had been convicted of larceny and sent to the penitentiary, that he was indicted for the murder of one Patricio Maes, and also for the murder of Gabriel Sandoval and pleaded guilty of murder in the second degree in both cases, but when the defendant inquired on cross-examination what the witness had been sent to the penitentiary for, the court sustained an objection, and would not permit investigation further than the mere record; upon the same ground permission to cross-examine him as to whether he had actually participated in the murder of Maes was denied. We do not think the proofs should have been confined so absolutely to the record of those crimes; while a detailed examination would be calculated to confuse the issue and produce prolixity, which must be, of course, avoided (Toledo, etc., R'y v. Bailey, 43 Ill. App. 292), yet a murder committed under circumstances of atrocity and extreme deliberation would show a far deeper moral depravity than one committed in the heat of passion, and we think the court drew the line too narrowly, especially as it appears from the questions asked the witness Manuel Gonzales y Baca, that it was intended to show that the murder of Maes was committed pursuant to a secret meeting at which his death was determined upon by his confederates in crime. It was also sought to show that notwithstanding these convictions against Cabellero he was allowed to continue at liberty upon his own recognizance. In ruling out such cross-examination the court repeatedly held that the inquiries should be confined to whether the inducement to testify had been made under promise or hope of reward from "any person competent to make such tender to him." The witness for the territory, Julian Trujillo, had also been convicted of the murder of

ACCOMPLICES: pardon: inducements to testify.

Sandoval and sent to the penitentiary, from which he had been pardoned. The pardon itself recites that Trujillo had rendered valuable assistance in discovering many other crimes, and that he was needed as a witness for the purpose of bringing to conviction the guilty parties. The witness Manuel Gonzales y Baca had been indicted for robbing a store and postoffice, also for cow stealing, and also for the murder of Patricio Maes; while in jail he had sent for the district attorney, whom he informed that Sandoval's body was buried in a privy vault, and the same night after this conference he was released from jail. He was asked whether he had not testified against the others who participated in the robbery of the postoffice, but the court sustained an objection to the question. The defense also sought to show that the witness was connected with the gang of outlaws by whom Maes was murdered, and whether he had not presided at the meeting at which Maes was condemned to death, but objections to these questions were sustained. It was also sought to show that he had never been put upon trial for any of these offenses, but had been allowed his liberty on his own recognizance. Objections to these questions were also sustained.

While sustaining these objections the court ruled that specific acts could not be shown either upon cross-examination, or by other witnesses, and that the inquiry was limited to general reputation, and also observed: "If it should appear that this witness has been useful in discovering the infamy that has disgraced the civilization of this community, it would not be any reason for this court to depart from adherence to fundamental principles of law as it appreciates them." Exception was reversed to the remark as well as the ruling of the court. It will not be amiss to observe that while we entirely agree with the learned judge that the testimony in this case disclosed appalling infamy, and

while it is probably true that the prosecution was compelled to employ the testimony of infamous men in order to bring those equally if not more infamous to justice, yet the jury should have been left to weigh and sift the testimony of these criminals, unembarrassed by any suggestion or intimation of opinion by the court, so that every reasonable facility should be afforded the jury to give such testimony all the credit it deserved, but no more credit than it really deserved. The case was being tried before the jury who were to pass upon the guilt of the defendant, his life was involved, and it was his right to have the testimony weighed without regard to its usefulness in the discovery of the infamy to the officers of justice. The remark of the judge, suggesting the usefulness of such testimony in bringing the guilty to justice, implied, in the opinion of the judge, it was truthful testimony, although disclosing the infamy of the witness and his confederates, who had disgraced the civilization of the community. Such a remark was a harmful comment on the credit or weight to be given to the testimony.

Applying the principles of law which we considered in this opinion (before adverting to the rulings of the court in the exclusion of the testimony of these witnesses upon cross-examination), we think that the court committed serious error in so sustaining these objections we have mentioned; we think it quite clear that the matters sought affected in an important degree the credit of the witnesses, and it was entirely competent to attack their credibility in this way upon cross-examination, and attack by proofs of general reputation was not the only way open. See Territory v. DeGutman, 8 N. M. 92, in addition to authorities already cited.

The court also committed error in excluding evidence as to the liberty and favor accorded these wit-

nesses by the territory, notwithstanding their convic-
tion for crimes, and in confining the inquiries as to
whether the inducements had been offered by persons
having authority. In State v. Kent, the accomplice
who had testified against the defendant was asked on
cross-examination whether he expected to be hung for
his admitted crime, and also whether he had in fact
been prosecuted or imprisoned; the court below had
sustained objection to the question and it was held re-
versible error. Say the court: "Even if no express
promise of immunity is made, the accomplice may be
led to believe something in the conduct or speech or
tone of voice of some one connected with the prosecu-
tion that nevertheless his testimony involving another
in guilt with him will earn him some consideration at
the hands of those who control his fate." The testi-
mony offered "bore directly on the question whether
he was not testifying under hope. Without any ex-
press promise, he might infer from the fact that no
proceedings had been taken against him, but that the
whole strength of the prosecution was directed against
Kent (the defendant) alone, that he was to be the re-
cipient of some favor." 62 N. W. Rep. 638. The
same rule has been laid down by the supreme court of
Michigan in People v. Hare, 24 N. W. Rep. 843. These
remarks seem especially pertinent in this case, where
the whole burden seems to have been directed against
this defendant, although others equally deserving of
punishment are given pardons and liberty. In the
days when Titus Oates and Bedloe and Dick Talbot
flourished, the successes of informers and conscience
stricken accomplices caused innocent men to tremble.
It is not less necessary in New Mexico to-day that men
like Cabellero, Trujillo and Gonzales y Baca, should
stand in the witness box in their true characters, strip-
ped of all disguises, so that the jury may know and judge
of their testimony for as much but no more than it is

worth.    And the jury should be instructed, as they were not in this case although such an instruction was requested, that they should consider the inducements and influences of hopes or promises under which such testimony is given.    For these errors the judgment is reversed and the cause remanded for a new trial.

COLLIER, HAMILTON, and LAUGHLIN, JJ., concur.