EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* ELEUTERIO HERNÁNDEZ PÉREZ, acusado y apelante.

*Número:* CR-64-437 *Resuelto:* 17 de febrero de 1966

*Edna Abruña Rodríguez*, abogada del apelante; *J. B. Fernández Badillo, Procurador General*, y *Héctor R. Orlandi Gómez, Procurador General Auxiliar*, abogados de El Pueblo.

PER CURIAM: El apelante, Eleuterio Hernández Pérez, fue acusado de haber ocasionado la muerte a un ser humano al hacerle varios disparos con un revólver infiriéndole una herida que le ocasionó la muerte; que realizó tal acto ilegal, voluntaria y maliciosamente con premeditación, deliberación y propósito decidido y firme de matar. También fue acusado de tener un arma en su posesión y dominio y de portarla sin licencia—infracción a los Arts. 6 y 8 de la Ley de Armas. Fue convicto de homicidio voluntario, y por haber aceptado la alegación de subsiguiente se le declaró culpable del referido delito en grado subsiguiente así como de la infracción a los Arts. 6 y 8 de la Ley de Armas. En tal virtud, fue condenado a cumplir una pena indeterminada de 15 a 30 años de presidio en el delito de homicidio voluntario en grado subsiguiente, otra de 2 a 4 años de presidio por la infracción al Art. 8 de la Ley de Armas y a un año de cárcel por la infracción al Art. 6 de la referida ley.

En apelación imputa al tribunal de instancia la comisión de cinco errores, los que no se cometieron como demostraremos a continuación.

1.—"Erró el tribunal al no permitir que se impugnara a la testigo Providencia Carrera Ruiz aduciendo prueba de conducta contraria a la alegada por ella y consistente en varios casos de alteración a la paz por los cuales había sido sentenciada, permitiéndolo únicamente en aquellos casos en que la testigo había hecho alegación de culpabilidad."

La testigo de cargo, Providencia Carrera Ruiz, mujer del occiso, testificó en contrainterrogatorio que nunca había discutido con el apelante; que nunca lo ofendió de palabras; que nunca alteró la paz; que nunca discute con nadie; que no le gusta discutir. No se permitió preguntarle si nunca altera la paz y si había pagado multa por alterar la paz pero añadió

el tribunal de instancia que estas preguntas son permisibles si hubiere prueba de que se ha declarado culpable. Se admitió prueba de que seis años atrás la testigo se declaró culpable de alterar la paz y que en otro caso en que fue denunciada por el mismo delito, testificó que creía que no se declaró culpable.

De acuerdo con el Art. 158 de la Ley de Evidencia (32 L.P.R.A. sec. 2150), un testigo puede ser tachado por la parte contraria mediante evidencia contradictoria o de que su reputación en cuanto a veracidad, honradez o integridad es generalmente mala; pero no con evidencia de determinados actos reprobables salvo que podrá probarse mediante el examen del testigo o la anotación de la sentencia, que fue convicto de delito grave.[1] Consistentemente hemos resuelto que no se puede impugnar a un testigo con prueba de procesos pendientes en su contra, de arresto, de acusaciones o denuncias, pero sí con prueba de convicciones de delitos graves. *Pueblo* v. *Rosario Cancel*, 90 D.P.R. 168 (1964); *Pueblo* v. *González*, 80 D.P.R. 208 (1958); *Pueblo* v. *Rodríguez*, 62 D.P.R. 779 (1944); *Pueblo* v. *Vélez*, 51 D.P.R. 665 (1937); *Pueblo* v. *Belardo*, 50 D.P.R. 512 (1936). Sin embargo, en el caso de un acusado, cuando en examen directo se ha aducido prueba de su buena reputación y con tal motivo "se abre la puerta a su pasado" es admisible evidencia de otros delitos fueran estos graves o menos graves, o de que ha sido arrestado anteriormente, como prueba de refutación o puede inquirirse sobre tal situación en contrainterrogatorio. Por otra parte, cuando el acusado, "en su examen directo, no entra en cuestiones relacionadas con su historia pasada, el fiscal no puede comenzar inquisición alguna a ese respecto, excepto en cuanto al único caso de previa convicción por un felony . . ." *Pueblo* v. *Archeval*, 74 D.P.R. 512, 516–517 (1953). *Pueblo* v.

[1] La Regla Núm. 131 de las de Procedimiento Criminal dispone que la admisibilidad de evidencia y la competencia y privilegio de los testigos se regirán por la Ley de Evidencia de Puerto Rico excepto lo que en contrario se disponga en la ley o en dichas Reglas.

*Iturrino de Jesús*, 90 D.P.R. 706 (1964). Cf. *Walder* v. *United States*, 347 U.S. 62 (1954).

■ No procedía, por lo tanto, que en contrainterrogatorio se le preguntase a la testigo si nunca alteró la paz o si había pagado multa por ese motivo. Como se trataba de un delito menos grave la prueba no era admisible como no la era la admitida con respecto a la convicción por un delito de tal clasificación. Por lo tanto, no erró el tribunal de instancia al negarse a permitir que se impugnara a una testigo de cargo en la forma indicada. El error que en efecto se cometió de admitir prueba de que la testigo había sido convicta de una alteración de la paz más bien favoreció al apelante, de manera que no le perjudicó. [2]

2.—"Erró el Tribunal al negarse a instruir al jurado que si el acusado había usado el arma únicamente en su residencia no había infringido el Artículo 8 de la Ley de Armas."

■ Del testimonio de los testigos de cargo se desprende que el apelante llegó de la calle, entró por el portón de la casa en que ocurrieron los hechos; que la víctima estaba sentado en un sillón en el balcón de dicha casa donde vivía; que al éste ver al apelante acercarse se levantó; que el apelante se bajó al acercarse aquél y le disparó tres tiros con un revólver de cabo negro que luego lanzó a la Laguna San José. Previamente había amenazado a la esposa de la víctima con un revólver de similar descripción. Un testigo declaró que vio que el apelante, al salir de la casa, guardó en el bolsillo "como un arma de cabo negro"; que doña Provi (la mujer de la víctima) gritó y dijo "Mire como éste amenaza con un trapo de revól-

---

[2] Véase sobre el tema tratado:

"*Impeachment of witness by evidence or inquiry as to arrest, accusation, or prosecution*" 20 A.L.R.2d 1421; *Evidence: "Impeaching witness by showing specific wrongful acts*", 11 Hastings L.J. 74; "*Impeachment of witness by evidence or inquiry as to arrest, accusation, or prosecution*", later case service, 19–31 A.L.R.2d, pág. 311; 3 Wharton's *Criminal Evidence*, secs. 871, 927; M'Cormick *On Evidence*, "Impeachment, Character", ch. 5, págs. 93 y ss; 3 Wigmore *On Evidence*, secs. 890, 925, 980, 980a.

ver." No se probó que tuviese licencia para portar armas. Por lo tanto, la única inferencia lógica de la prueba en cuestión es que el apelante portaba el revólver en la vía pública al venir hacia la casa, pasar el portón, acercarse al balcón de la misma y disparar dicha arma. *Pueblo v. García Félix*, 90 D.P.R. 158 (1964); *Pueblo v. Martínez Maldonado*, Sentencia de 5 de diciembre de 1963; *Pueblo v. Rivera Romero*, 83 D.P.R. 471 (1961); *Pueblo v. Rosario*, 80 D.P.R. 318 (1958); *Pueblo v. Santiago*, 80 D.P.R. 310 (1958); *Pueblo v. Rivera*, 75 D.P.R. 425 (1953). Por lo tanto, concluimos que no se incurrió en el error en cuestión.

3.—"Erró el Tribunal al no proteger al testigo de defensa Ángel Luis Martínez frente al interrogatorio implacable e incansable del fiscal quien le acosaba sin darle tiempo a pensar y explicar las contestaciones."

Este error se basa en la siguiente parte del contrainterrogatorio del único testigo de la defensa: (T.E. págs. 166–167.)

"P.—¿Por qué entra por la ventana?

R—Como vivo en la orilla de la carretera, por donde quiera subo.

P—¿Por qué le gusta entrar por ventanas? ¿Usted no se dedica a entrar a casas por ventanas?

Luego repreguntó el fiscal: (T.E. pág. 179.)

"P—Dijo: 'Vi, miré por la ventana'. Después, me dijo que estaba fuera de la casa, recostado de la ventana. ¿O es que usted no estaba por todo aquello y no encuentra dónde ponerse?

R—Estaba allí.

Hon. FISCAL: Habíamos quedado esta mañana . . . veo a través del miraje de la impericia, que tiene tono esa transacción de los tiros . . . como en 5 minutos no se levantó de donde estaba para ir a ver, si de allí podía ver bien. No quería tiros, el cuadro de ayudar al amigo de 10 años.

Lcdo. VELASCO: Ese es un comentario, eso del cuadrito novelesco, vamos a hablar con propiedad.

Hon. FISCAL: Sí quería estar de novelero o ayudar a su amigo de 10 años.

"Hon. JUEZ: Se permite.

Hon. Fiscal: Yo estaba mirando, no estaba supuesto a matarlo allí.

Hon. Juez: ¿Lo hizo o no?

R. No. ¿Por qué? Porque no tenía que ir allí a nada. ¿Cómo era la cadena de 1″ de diámetro . . . así de lejos lo veo, en la obscuridad de la noche en una ventana enganchao, había un foco. ¿En qué mano la cogía para dar los eslabonazos? En la mano derecha. ¿Dónde le dió el primero? En la cara. ¿Y el segundo? En la cara. ¿Y el tercero? en la cara. ¿Y el cuarto?, no sé más nada, ahí paró él. Ud. dijo que aquella noche no se aguantó, sino que siguió tirándole de todo en la cara, todos los golpes eran en la cara.

Lcdo. Velasco: Deje los comentarios.

Hon. Juez: ¿Cuál es la objeción?

Lcdo. Velasco: Cada pregunta trae un comentario. La misión del Fiscal es hacer preguntas y recibir contestaciones."

■ Se arguye que los comentarios en cuestión restaron valor al testimonio del testigo quien ante la hostilidad del fiscal se tornó tímido y receloso de no caer en el ridículo a que estaba siendo sometido; que tales comentarios desvirtuaron la función del fiscal en el esclarecimiento de la verdad y el magistrado debió velar por que se cumpliera esa función. En vista de que el testigo declaró que no sabía leer ni escribir, ni "cuando es un día, ni cuando es otro" y que su declaración era vaga e imprecisa a veces, no es extraño que el fiscal procediera en el contrainterrogatorio en la forma en que lo hizo. El récord no demuestra que el fiscal acosara al testigo y no le diese tiempo a pensar y explicar las contestaciones. Además, es aparente que el contrainterrogatorio en cuestión no afectó ante el jurado su testimonio de que el acusado al dispararle a su víctima se defendía de la agresión de éste con un pedazo de cadena, pues al acusado se le imputó un delito de asesinato en primer grado y el jurado rindió un veredicto de homicidio voluntario. El error en cuestión, por lo tanto, no se cometió.

4.—"Erró el Tribunal al ordenar frente al jurado que el Márshal se hiciera cargo del testigo de defensa dando órdenes

estrictas de que dicho testigo no podía comunicarse con el abogado del acusado, palabras y actitud del Tribunal que constituyeron un comentario al peso de la prueba, esto es, a la credibilidad que debía merecer dicho testigo al jurado."

El incidente a que se refiere este apuntamiento es el siguiente; (T.E. págs. 182–183.)

"Hon. Juez Carreira:

Vamos a recesar hasta las dos de la tarde.

P—Usted no deberá hablar con nadie, ni con su abogado, ni con testigos, ni con el acusado. ¿Entendido? So pena de desacato. Está bajo las Reglas del Tribunal.

Fiscal Ortiz Juan:

Quisiera no solamente que se le haga esa admonición, sino que el Márshal se quede con él y lo lleve a almorzar. Está declarando.

Hon. Juez Carreira:

Márshal, hágase cargo de él. Lo lleva a almorzar. . . ."

Alega la defensa que "este incidente que en otra situación carecería de total importancia adquiere ante los hechos del caso gran importancia ya que se trata del mismo testigo que el fiscal ha hostigado y ha puesto su testimonio en duda mediante sus comentarios y ahora no le permite que se separe del márshal como indicando que no es persona en quien se pueda confiar."

■ Carece de mérito esta imputación de error. No es aparente que los comentarios en cuestión causasen perjuicio alguno al apelante o que le privasen de un juicio justo. *Pueblo* v. *Andrades González,* 83 D.P.R. 849, 860 (1961); *Pueblo* v. *Matos,* 81 D.P.R. 508, 517 (1959); *Pueblo* v. *Díaz,* 74 D.P.R. 375, 394 (1953).

5.—"Erró el Tribunal al permitir que el Fiscal calificara la prueba testifical renunciada por él como corroborativa del otro testimonio oral presentado por el Pueblo."

■ Este apuntamiento se basa en que al terminar de presentar su prueba, el fiscal anunció al tribunal que renun-

ciaba a los demás testigos de cargo cuyos nombres aparecían al dorso de las acusaciones por considerar su testimonio "como prueba acumulativa o corroborativa". Esta es una situación muy distinta a la de *Pueblo* v. *Orona Merced*, 89 D.P.R. 336 (1963), pues en este último el fiscal, en su informe final al jurado dijo, refiriéndose por sus nombres a ciertos testigos que habían declarado, que el testimonio en particular de ellos había sido "corroborado por la prueba que nosotros no presentamos y ofrecimos como prueba de carácter acumulativo". Consideramos que incurrió el tribunal en error al sostener esta actuación del fiscal en *Orona Merced*, supra, pues era impropio de éste informar al jurado que el testimonio de ciertos testigos fue corroborado por el de otros que no testificaron; no había justificación alguna para hacer alusión a una prueba que no se presentó. Por el contrario, en el caso ante nos, en el acto de ofrecer la evidencia del Pueblo, el fiscal informó que: (T.E. págs. 132–133.)

"No hay más prueba. Al *dorso de la acusación* hay otros testigos cuyos testimonios resultarían acumulativos y o corroborativos. Están presentes en Sala y los ponemos a disposición de la defensa. Si me permite el Tribunal, le diré cuáles son. . . ." (Énfasis nuestro.)

Luego el juez aludió otra vez a este asunto y dijo: (T.E. pág. 133.)

"Al dorso de la acusación hay unos testigos que han comparecido y que no los ha utilizado el señor Fiscal."

El fiscal respondió a esto: (T.E. pág. 133.)

"Anuncio que es prueba acumulativa y o corroborativa, o *prueba de referencia,* y los ponemos a disposición de la defensa. Ese es nuestro caso." (Énfasis nuestro.)

El abogado defensor no objetó las palabras del fiscal. No surgió ningún incidente en cuanto a este punto. Esta alusión a prueba corroborativa fue en el acto de ofrecer en evidencia la prueba de cargo, y que la referencia fue a

testigos que aparecían al *dorso de la acusación*, y además, el fiscal no hizo más comentarios sobre el particular.

 Si bien los fiscales no deben usar la palabra "corroborar"([3]) en relación con prueba no ofrecida, bajo las particulares circunstancias de este caso el anuncio del fiscal en la forma que lo hizo no pudo tener otro resultado que el de no crear la presunción en su contra que establece la Ley de Evidencia al efecto de "que toda evidencia voluntariamente suprimida resultará adversa si se ofreciere." 32 L.P.R.A. sec. 1887, inciso 5. *Pueblo* v. *Flores Berty*, 92 D.P.R. 577 (1965).

*Por los fundamentos expuestos se confirmarán las sentencias dictadas en este caso por el Tribunal Superior, Sala de San Juan, en 17 de diciembre de 1963.*

---

([3]) Según la Ley de Evidencia, Art. 16 (32 L.P.R.A. sec. 1636), la evidencia acumulativa es "la adicional del *mismo carácter* tendiente al mismo fin". La evidencia corroborante es "la adicional de *distinto carácter* tendiente al mismo fin que aquella a la que se adiciona." (32 L.P.R.A. sec. 1637.) (Énfasis nuestro.)