EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* INOCENCIO CRUZ MANFREDI, acusado y apelante.

*Número*: CR-66-278          *Resuelto*: 28 de febrero de 1967

*Héctor Lugo Bougal* y *Julio Fernández Cabrera,* abogados del apelante; *J. B. Fernández Badillo, Procurador General,* y *Nilita Vientós Gastón, Procuradora General Auxiliar,* abogados de El Pueblo.

EL JUEZ ASOCIADO SEÑOR BLANCO LUGO emitió la opinión del Tribunal.

El día 16 de agosto de 1963, alrededor de las cinco de la tarde, varios agentes especiales y de la detective, provistos de la orden correspondiente, allanaron una casa sita en el sector los Chinos, de Ponce, y, luego de efectuar un registro, ocuparon unos objetos que se encontraban sobre el marco de la puerta de entrada de una habitación destinada a dormitorio. Luego de ser analizados "el polvo blanco que estaba en el sobre de celofán contenía clorohidrato de diacetilo de morfina y además el cuchillo que contenía polvo pegado, este polvo contenía clorhidrato de diacetilo de morfina, o sea heroína". Se acusó al apelante Inocencio Cruz Manfredi por tener en su posesión y dominio la droga narcótica heroína.

Para obtener la orden de allanamiento se prestó una declaración jurada por el agente Juan Santiago Meléndez. En el juicio, con la tenaz oposición de la defensa, (¹) se le per-

---

(¹) El acusado había solicitado antes del juicio la supresión de la evidencia ocupada fundándose en la insuficiencia de la declaración jurada que

mitió a Santiago relatar a grandes rasgos los hechos que dieron margen a la expedición da la orden. Declaró que el día 16, a las once de la mañana, observó al acusado entregarle un sobrecito de celofán de una pulgada por una pulgada y media a otra persona que le entregó un billete. (²) El Tribunal indicó que este testimonio era admisible por estar íntimamente relacionado con los hechos por los cuales se juzgaba al acusado y constituir una de las excepciones reconocidas a la regla que impide presentar prueba sobre la comisión de otros delitos.

La prueba de cargo estableció que los agentes se dirigieron a la casa descrita en la orden encontraron al apelante en el balcón y le mostraron la orden. Luego penetraron en la casa y realizaron el hallazgo en la tercera habitación. El agente Santiago declaró que se había registrado el cuarto en donde dormían los acusados, (³) pero esta afirmación fue eliminada a solicitud de la defensa. No sabían quién era el dueño de la casa; luego se enteraron que pertenecía a un hermano del acusado.

El apelante ocupó la silla testifical. Dijo que para la fecha del allanamiento hacía diez o doce días que había regresado de Nueva York; que había ido a residir provisionalmente a la casa de su hermano porque otra que poseía había sido alquilada por éste; que en la casa convivían otras ocho personas incluyendo cinco adultos; que no ocupaba ninguna de las habitaciones y que dormía en la sala en un canapé. También intentó establecer que al diligenciarse la orden de allanamiento, no se ocupó evidencia incriminatoria,

---

dio base a la orden. El tribunal declaró sin lugar el planteamiento y nos negamos a revisar su resolución. *Cruz Manfredi* v. *Tribunal Superior*, Cert. C-64-87, resuelto en 18 de marzo de 1965.

(²) La defensa logró que el tribunal ordenara la eliminación de parte del testimonio al efecto de que el "deck" era de "supuesta heroína" y que "al llegar el sujeto a la casa del acusado lo llamó Chencho".

(³) La esposa del apelante fue coacusada y absuelta por el jurado.

y que fue después que se les condujo al cuartel que se hizo un segundo registro en su ausencia que supuestamente la produjo. Insinúa que se trata de evidencia deliberadamente colocada por los agentes.

Para solicitar la revocación de la sentencia se señala que (a) la sentencia es contraria a la prueba y a derecho por no haberse establecido relación alguna de posesión por parte del acusado con la evidencia ocupada durante el allanamiento; (b) el tribunal a quo erró al permitir evidencia sobre otros actos delictivos que no son los relacionados en la acusación.

(1–2) Antes de comenzar a transmitir las instrucciones el juez a quo indicó que por estipulación de las partes se dispensaba de hacer un resumen de la prueba, salvo que se interesara por alguno de los miembros del jurado que se reprodujera el testimonio de cualquiera de los testigos. En ese instante el señor Manuel Ballesteros, quien luego fue designado para presidir el jurado, inquirió:

"Sobre el incidente que el agente observó por la mañana, ¿se descartó para los efectos del jurado o se tiene que tener en cuenta?"

El juez respondió:

"Con relación al incidente que el agente observó por la mañana que dio lugar a que se emitiera orden de allanamiento, el incidente, pues, está tan íntimamente ligado con el resto de la prueba que debe considerarlo el jurado. Lo que el Tribunal no permitió fue cualquier manifestación que pudo haber escuchado el testigo, pero el incidente propiamente, pues, ustedes le darán el peso que ustedes consideren tiene a la luz del resto de la prueba y de la demás evidencia admitida por el Tribunal."

■ La pauta para la admisión de evidencia de otros delitos es la relación lógica de estos delitos con el que se imputa en la acusación. Como regla general, tal evidencia no es pertinente a menos que se ofrezca para probar conocimiento, intención, designio o plan, o por formar parte del *res gestae*, o cuando ambos delitos formaran parte de una misma transacción. *Pueblo* v. *Juarbe*, 43 D.P.R. 448 (1932), nuestra pri-

mera expresión sobre el particular, contiene una exposición de las razones de orden público que justifican tanto la norma de exclusión como sus excepciones. Ilustran, *Pueblo* v. *Pérez*, 47 D.P.R. 765, 788–790 (1934), la excepción de la admisión para establecer la intención—en proceso por el delito de abuso de confianza se aceptan en evidencia otros cheques que el acusado se había apropiado en la misma forma que la imputada en la acusación—; *Pueblo* v. *Rodríguez*, 66 D.P.R. 317, 324–325 (1946), la de transacciones similares coetáneas para probar un plan preconcebido o la intención de defraudar —otras transacciones de la acusada de compra de billetes de lotería relacionadas con la envuelta en la que dio margen al proceso—; *Pueblo* v. *Román*, 70 D.P.R. 50 (1949), la de transacciones íntimamente entrelazadas—prueba sobre otro asesinato perpetrado por el acusado luego de haber cometido el de un policía que intentó arrestarle para impedirlo. Véanse además, *Pueblo* v. *Archeval*, 74 D.P.R. 512 (1953), y *Pueblo* v. *Aponte González*, 83 D.P.R. 511 (1961).

■ Examinados los hechos del presente caso a la luz de los principios expuestos la convicción no puede sostenerse. La prueba del incidente que motivó la expedición de la orden de allanamiento no establece conocimiento, intención, designio o plan, y tampoco forma parte del *res gestae*. ¿Puede decirse que forma parte de una misma transacción? Forzoso es concluir que eliminando las inferencias que puedan hacerse de la transacción matinal, el resto de la prueba de cargo no conectó al apelante con la posesión de narcóticos, pues se limita a establecer el hallazgo. Por otro lado ni siquiera se admitió la prueba que tendía a establecer que el sobre entregado durante la mañana contenía heroína. La manifestación al efecto, aunque escuchada por el jurado, fue eliminada a los fines de la consideración de la responsabilidad criminal. En esencia lo que se pretende es que se sostenga la convicción, no por la prueba que desfiló en cuanto a los hechos imputados

en la acusación, de por sí insuficiente, sino a base de la inferencia de otros hechos independientes e igualmente insuficientes.

*Se revocará la sentencia dictada por el Tribunal Superior, Sala de Ponce, en 7 de julio de 1965.*

