EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* FRANCISCO PADILLA ARROYO, acusado y apelante.

*Número:* CR-74-70 *Resuelto:* 22 de septiembre de 1975

*Yamil Galib Frangie* y *Jovino Martínez Ramírez,* abogados del acusado; *Miriam Naveira de Rodón, Procuradora General,* y *Héctor R. Orlandi Gómez, Procurador General Auxiliar,* abogados de El Pueblo.

EL JUEZ PRESIDENTE SEÑOR TRÍAS MONGE emitió la opinión del Tribunal.

Se halló culpable al apelante en juicio por jurado de los delitos de poseer, ocultar y transportar, y vender heroína en violación al Art. 29 de la anterior Ley de Narcóticos, 24 L.P.R.A. sec. 974z. Se le sentenció a cumplir concurrentemente en cada caso penas de diez a veinte años de presidio. El apelante alega la comisión de cinco errores.

## I

Los dos primeros se refieren a la aquilatación de la prueba.

El único testigo presencial de cargo fue José Antonio Padilla Matías, agente encubierto de la División de Drogas y Narcóticos. Declaró que el día de los hechos se personó, acompañado de un confidente, en un restorán de un sector de Cabo Rojo. Encontró allí al apelante, quien era dueño del negocio y a quien conocía por cerca de un mes. En ocasiones anteriores habían hablado de drogas y esta vez el declarante le indicó, en la jerga del tráfico, que quería comprarle dos paquetes de heroína. El acusado le contestó que sólo le quedaban trece bolsas. Inmediatamente salieron del restorán y se dirigieron al automóvil del acusado, de donde éste extrajo un sobre y se lo entregó al agente a cambio del dinero acordado. El testigo se marchó, llamó enseguida a su supervisor, el señor Eugenio Soto, y el propio día de los hechos le hizo entrega del sobre, que contenía trece envolturas de heroína. El testigo y su supervisor iniciaron la evidencia entregada para su identificación futura. El mismo día de los hechos el testigo preparó y archivó el correspondiente Informe de Violación de Ley.

Se impugna, por flaco y descarnado, el testimonio del agente. No estamos de acuerdo con esta contención. No es éste el testimonio inmerecedor de crédito a que aludimos en *Pueblo* v. *Ayala Ruiz*, 93 D.P.R. 704 (1966) y *Pueblo* v. *González del Valle*, 102 D.P.R. 374 (1974). El récord revela que el agente describió la naturaleza de su trabajo y la zona que le fue

asignada y ofreció detalles precisos sobre la transacción, incluyendo la forma, la hora y el lugar en que se llevó a efecto.

■ Es cierto que hubo omisiones. No se reveló, conforme a *Ayala Ruiz*, el término durante el cual se extendió la investigación del agente, ni se señalaron los resultados obtenidos en dicha investigación, indicando la acción tomada contra otros infractores. Reiteramos la importancia de que la Policía y el Ministerio Público cumplan estrictamente con las normas sentadas en *Ayala Ruiz* y en *González del Valle*. Las omisiones ocurridas en este caso, no obstante, como también las contradicciones en la prueba de cargo sobre hechos adjetivos, no son de tal orden que maculen irremediablemente la credibilidad de dicha prueba y exijan la revocación de la sentencia.

## II

■ El apelante alega en su tercer señalamiento que erró el tribunal "al declarar sin lugar la moción de desestimación radicada por el acusado basada en la dilación habida entre la fecha que se alega ocurrieron los hechos y aquélla en que prestó declaración jurada el agente encubierto, juramentó la denuncia y se arrestó al acusado."

Se arrestó al acusado unos cuatro meses después de los hechos. Se ha establecido que el derecho a juicio rápido no ampara este género de tardanza, pero que ésta puede constituir una violación al debido proceso de ley. *United States* v. *Marion*, 404 U.S. 307–320, (1971); 8A Moore, *Federal Practice*, 2d. ed., sec. 48.03[2], pág. 48-27; *Ross* v. *United States*, 349 F.2d 210 (D.C. Cir. 1965); *vide: Pueblo* v. *Tribunal Superior*, 81 D.P.R. 455, 469 (1959). Para que exista la violación debe concluirse que el interés en no perjudicar la defensa del acusado y su derecho a un juicio justo e imparcial se sobrepone en las circunstancias específicas que presente el caso al interés del gobierno en la dilación resultante. Comment, *Pre-Arrest Delay: Ross Revisited*, 33 U. Pitt. L. Rev. 811, 816 (1972).

Sobre este particular nos expresamos en *Pueblo* v. *Soto Zaragoza*, 94 D.P.R. 350, 353 (1967) (Blanco Lugo):

"Si bien es verdad que el acusado debe demostrar que la demora en radicar la acusación le ha causado perjuicio, como ésta es responsabilidad del Estado y se permite para su beneficio, no puede requerírsele un peso de prueba exaccionante. Como se dijo en *Jackson*, supra, muchas veces la dificultad en establecer el perjuicio es la mejor evidencia de su existencia. Siendo la defensa de coartada la que usualmente se presenta, no debe olvidarse que la mayoría de los infractores pertenecen a una estrata subcultural tipificada por la monotonía en el diario vivir, y que esta misma ausencia de acontecimientos importantes en sus vidas les impide distinguir un día de otro día."

La incapacidad del acusado para recordar las circunstancias alrededor del día de los hechos está claramente establecida en el récord. Prácticamente lo único que pudo ofrecer en evidencia el apelante fue la rutina de su vida. Descargó adecuadamente el peso inicial de la prueba de perjuicio a su defensa. Le correspondía entonces al Ministerio Público justificar la demora. *United States* v. *Deloney*, 398 F.2d 324, 325 (7th Cir. 1968). La prueba presentada a tal efecto, según se desprende de la minuta de la vista sobre la moción de desestimación radicada a base de la tardanza, fue que no se arrestó a ninguna persona para no perjudicar una investigación general en proceso, ya que el agente encubierto continuaba su labor como tal.

A la luz de los hechos de este caso estimamos que se estableció una justificación legítima para la dilación de cuatro meses ocurrida. El agente encubierto es un instrumento policiaco indispensable en la lucha contra el nefasto tráfico de drogas. Debemos advertir, no obstante, que el ocultamiento de su identidad no puede alargarse irrazonablemente, al extremo que vulnere la Constitución. Note *Pre-Arrest Delay: Evolving Due Process Standards*, 43 N.Y.U. L. Rev. 722 (1968).

## III

■ Argumenta el apelante también que erró el tribunal al decretar inadmisibles los registros oficiales de asistencia de la escuela adonde asistía su hija, privándolo así de su derecho constitucional a presentar evidencia en su descargo. El deseo del apelante era establecer, mediante prueba de que su hija había asistido a la escuela, que él no se encontraba el día y hora de los hechos en el sitio de la alegada transacción ilegal, ya que acostumbraba pasar a buscarla todos los días. La evidencia era de orden corroborante, pues otro testigo, hijo del apelante, más el propio apelante, habían declarado sobre el particular, sin que se impugnase su testimonio.

Se cometió el error. No se justifica, aun dentro del amplio ámbito de la discreción judicial en esta zona, la exclusión de la evidencia corroborante, cuando el único testigo, fuera del acusado, que testificó sobre el hecho en cuestión era su propio hijo. *Vicenty* v. *Corona Brewing Corporation*, 73 D.P.R. 135, 143 (1942). Consideramos, no obstante, que el error cometido no perjudicó al acusado. La prueba ofrecida no era verdaderamente esencial. Aun dándole entero crédito al testimonio de la testigo, el jurado tenía amplia base en la prueba para declarar culpable al acusado. En ausencia de perjuicio no procede la revocación por error en la admisión de la prueba. *Sucesión Muñoz* v. *Cepeda*, 72 D.P.R. 593, 608 (1951); *Cedeño* v. *Tropical City Industries*, 71 D.P.R. 626, 631 (1950); *Pueblo* v. *Claudio*, 93 D.P.R. 133 (1966).

## IV

Plantea, por último, el apelante que se cometió error al permitírsele al fiscal contrainterrogar al acusado sobre alegadas causas por delitos menos graves y remotos.

En su teoría de defensa, el apelante anunció que habría de probar que era una persona que gozaba de buena reputación en la comunidad tanto como ciudadano, padre de familia y

hombre de empresa. En el proceso en sí el acusado ocupó la silla de los testigos y al preguntarle su abogado en el examen directo: "¿Don Franco, usted alguna vez en su vida se ha dedicado al tráfico de drogas?", respondió: "Nunca. Soy un hombre que me dedico a mi negocio y a criar mi familia." Consideró el fiscal, según se argumenta ante nos, que el apelante abrió de este modo la puerta a todo su pasado y contrainterrogó al testigo con relación a diversos delitos alegadamente cometidos: una alteración a la paz que databa de 1950, veintitrés años antes del juicio en proceso; una infracción a la Ley del Cierre alegadamente incurrida en 1960; supuestas violaciones a la ley de juegos prohibidos de 1961, 1962 y 1968; y otra alteración a la paz de 1967. La defensa objetó vigorosamente, pero sin éxito, esta línea de interrogatorio. El acusado no recordó la comisión de estos delitos, a excepción de que se le procesó por jugar gallos en 1961 y por la otra aludida violación a la ley de juegos prohibidos en 1968.

La regla en el Derecho Común por varios siglos era que los acusados que hubiesen sido convictos en alguna otra ocasión de un delito grave no tenían derecho a declarar. La incredibilidad de su testimonio se asumía como cuestión de derecho. 9 Holdsworth, *History of English Law* 177–97 (1926). Luego se les permitió ocupar la silla de los testigos pero, por regla general, los propios estatutos estatales que derribaron este impedimento permitieron hace muchos años la práctica de impugnar el testimonio del acusado mediante prueba de su comisión de delitos infamantes. McCormick, *Evidence*, sec. 43 (3ª ed. 1954).

Desde hace varias décadas se viene cuestionando la conveniencia y aun la constitucionalidad de esta norma. Ladd, *Credibility Tests—Current Trends*, 89 U. Pa. L. Rev. 166 (1940). En su estudio sobre el jurado norteamericano, Kalven y Zeisel demuestran el extraordinario efecto inhibitorio de la regla en cuestión. En la muestra estudiada por ellos, los acusados sin récord penal previo que resolvieron sentarse en

la silla de testigos excedieron en 37 por ciento a los que toma-
ron igual resolución a pesar de contar con condenas anterio-
res. Kalven and Zeisel, *The American Jury*, 1966, págs. 160–
161, nota 14. En los casos en que se permitió el uso de conde-
nas previas para impugnar la credibilidad del acusado el
porcentaje de veredictos de culpabilidad aumentó un 27 por
ciento, Kalven and Zeisel, *supra*, 160, dato que ha suscitado
graves dudas sobre si se está vulnerando en estas situaciones
el derecho a un juicio justo e imparcial. Spector, R. G., *Im-
peachment Through Past Convictions: A Time for Reform*,
8 De Paul L. Rev. 1, 5, nota 15 (1968) ; Note, *Constitutional
Problems Inherent in the Admissibility of Prior Record Con-
viction Evidence for the Purpose of Impeaching the Credi-
bility of the Defendant Witness*, 37 U. Cinc. L. Rev. 168
(1968).

El movimiento a favor de la rigurosa restricción o aun
de la abolición de la norma ha sido extenso.

Las Reglas Uniformes de Evidencia redactadas en 1953 y
aprobadas por el Colegio de Abogados de Estados Unidos, 3
*Práctica Forense Puertorriqueña* 313, Regla 21, permiten
únicamente, para impugnar la credibilidad de un testigo, la
presentación de prueba relativa a sentencias penales ante-
riores indicativas de deshonestidad o perjurio. Las Reglas
Uniformes se fundan a su vez en este respecto en el Código
Modelo de Evidencia del Instituto Americano del Derecho,
Regla 106. Goodhart, *A Changing Approach to the Law of
Evidence*, 51 Va. L. Rev. 759, 778 (1965).

Las nuevas Reglas Federales de Evidencia, aprobadas por
el Congreso de los Estados Unidos el 2 de enero de 1975, Ley
Pública 93–595, 93° Cong., 43 U.S.L.W. 137, 140, reflejan
estas preocupaciones. La Regla 609 (a) únicamente permite
que se ataque la credibilidad de un testigo con prueba de
crímenes anteriores en caso de delitos que envuelvan desho-
nestidad o perjurio o que sean castigables con prisión en
exceso de un año y el tribunal determine que el valor proba-

tivo de la evidencia es más alto que el perjuicio que pueda causársele al acusado. Este último criterio, que envuelve sopesar los intereses envueltos, se había establecido antes por jurisprudencia en algunas jurisdicciones. *Luck* v. *United States*, 348 F.2d 763 (D.C. Cir. 1965); *Brown* v. *United States*, 370 F.2d 242 (D.C. Cir. 1966); *United States* v. *Hildreth*, 387 F.2d 328, 329 (4th Cir. 1967). Conforme a la Regla Federal 609(b), sin embargo, no puede admitirse evidencia de la comisión de un delito anterior de la naturaleza indicada si el delito se cometió o el acusado cumplió la condena, lo que fuese más tarde, más de diez años con anterioridad al proceso, a menos que el tribunal estime que el valor de la evidencia sobrepasa su efecto nocivo. En este último caso, el fiscal le tiene que notificar por escrito al acusado su determinación de intentar utilizar dicha evidencia de modo que goce de oportunidad debida para refutarla.

En Puerto Rico, este Tribunal ha intentado ir más lejos. En tres ocasiones distintas a partir de 1958 este Tribunal le recomendó a la Asamblea Legislativa unas nuevas Reglas de Evidencia para sustituir la antigua ley vigente, calcada del viejo Código de California y ya reemplazado. En las tres ocasiones se rechazaron las Reglas aprobadas por este Tribunal, en que se disponía, para alentar a los acusados a que ocupen la silla de los testigos, que "No se podrá ofrecer evidencia sobre la comisión de un delito por el acusado que declara en el juicio, o sobre su convicción por un delito, ni se podrá contrainterrogarle sobre el particular con el único fin de atacar su credibilidad, si el acusado no ha producido antes evidencia con el solo fin de sostener su credibilidad. . . ." Ver: Regla 108 y Comentarios de Edmund M. Morgan, 3 *Práctica Forense* 147.

Es a la luz de estos desarrollos que debemos examinar nuestra jurisprudencia. No existe disputa sobre la regla general, que es al efecto de que evidencia de condenas anteriores no son admisibles. *Pueblo* v. *Cruz Manfredi*, 94 D.P.R.

163, 166 (1967). Existe, no obstante, considerable variación en los casos sobre el alcance de la norma de admitir la evidencia cuando el acusado testifica y "abre la puerta a su pasado". En *Pueblo* v. *Archeval*, 74 D.P.R. 512, 516 (1953), se dijo:

". . . el fiscal podía repreguntar al acusado respecto a cualesquiera hechos mencionados en el interrogatorio, o relacionados con los mismos. Al declarar el acusado en el examen directo que él no era malcriado, que su padre lo primero que le enseñó fue que respetara al otro hombre y a la mujer, y que su cuerpo no podía ser abusador, abrió las puertas al fiscal para examinarlo sobre todos los hechos que estuvieran relacionados con lo declarado por el acusado."

Adviértase que *Archeval* limita el contrainterrogatorio a "los hechos que estuvieran relacionados con lo declarado por el acusado," doctrina que halla apoyo en distinguidos comentaristas. 1 Underhill, *Criminal Evidence*, 6th ed., sec. 163, págs. 436–437.

En *Pueblo* v. *Hernández Pérez*, 93 D.P.R. 182, 185 (1965) se señaló que, de acuerdo con el Art. 158 de la Ley de Evidencia, 32 L.P.R.A. sec. 2150, un testigo puede ser impugnado por la parte contraria "mediante evidencia contraria, o de que su reputación en cuanto a veracidad, honradez o integridad es generalmente mala; pero no con evidencia de determinados actos reprobables, salvo que podrá probarse mediante el examen del testigo o la anotación de la sentencia, que fue convicto de delito grave." Añadimos allí, no obstante, que cuando en el examen directo el acusado aduce prueba de su buena reputación, éste abre la puerta a su pasado y es admisible entonces evidencia de otros delitos, graves o menos graves. Al mismo efecto: *Pueblo* v. *Reyes Lara*, 100 D.P.R. 676 (1972). Para una crítica de esta posición, véase: 1 Wigmore, *On Evidence*, 3rd ed., 1940, secs. 193 y 194; 2A Wigmore, *On Evidence* (Chadbourn ed.), 1970, sec. 987, págs. 911–912.

■ La regla de *Hernández Pérez*, sin embargo, según expresamos en *Pueblo* v. *Dones*, 102 D.P.R. 118 (1974), "tuvo su razón de ser en una época, pero ha sobrevivido su propósito." Expresamos así en dicho caso la nueva regla para la admisión de prueba de condenas anteriores:

". . . La admisión de esta evidencia, naturalmente, debe regularse por las normas usuales de relevancia a la cuestión que cada caso plantea. Podrá inquirirse en el contrainterrogatorio sobre dichos antecedentes o hechos específicos vinculados a la credibilidad, si no son remotos, y presentarse evidencia extrínseca de los mismos para impugnar la veracidad del testigo. Asimismo podrá presentarse, a los expresados fines, evidencia de convicción del testigo por delito que sin importar su calificación implique deshonestidad o perjurio. No estamos abriendo una compuerta al derrame indiscriminado de evidencia impertinente, extraña al asunto justiciable. La prueba para impugnar al testigo deberá fundarse en actos y hechos específicos y deberá limitarse a las materias relacionadas con veracidad o falsedad . . . ."

■ En el caso presente, ¿demuestra deshonestidad o perjurio o afecta la veracidad del testigo su alegada violación a la Ley del Cierre? ¿La alteración a la paz ocurrida en 1950 (multa: $3.00, dato que el fiscal no reveló, pero que surge del legajo de sentencia)? ¿Los otros delitos a que se ha hecho referencia antes? Tampoco reveló el Ministerio Público que en ninguno de los casos, comenzando con la infracción alegadamente cometida en 1962, sobre los que se contrainterrogó al apelante hubo disposición final. Véase: *Pueblo* v. *Hernández García*, 102 D.P.R. 506 (1974). La puerta que abrió el acusado, además, ¿fue de tal índole que permite el derrame indiscriminado de evidencia que ocurrió aquí?

■ No es necesario considerar estas cuestiones en detalle, sin embargo, como tampoco los serios problemas constitucionales que pueda plantear esta causa, pues al menos es claro que cuatro de los delitos menos graves a que aludió el fiscal son

remotos, datando de once, doce, trece y veintitrés años antes del juicio.

 La lejanía de una condena para fines de su admisión en evidencia debe juzgarse, por supuesto, a la luz de los hechos particulares de cada caso. Para tales fines debe medirse el valor relativo de los intereses en pugna. Entre los factores a considerar se encuentran la naturaleza de las convicciones anteriores y su relación con el delito imputado, con la credibilidad del acusado o con lo declarado por el acusado en el examen directo, según sea el caso, en adición, por supuesto, al tiempo transcurrido, que puede ser tan claramente excesivo que excluya la consideración de cualquier otro factor. 1 Wharton, *Criminal Evidence*, 13th ed., 1972, sec. 260, pág. 622. No estimamos tan indispensable para probar las infracciones imputadas en este caso a las leyes para controlar los narcóticos, presentar evidencia de una alteración a la paz que ocurrió hace veintitrés años o de una infracción a la Ley del Cierre que tuvo lugar hace trece años o del gusto del apelante por el juego de gallos. El posible perjuicio del acusado en esta situación de hechos sobrepasa el interés del Estado en tal ejercicio de arqueología penal.

*Se revocará por los fundamentos expuestos la sentencia apelada.*

Los Jueces Asociados, Señores Martín e Irizarry Yunqué, concurren en el resultado sin opinión.