EL PUEBLO DE PUERTO RICO, apelado, *v.* LUIS A. FRADERA OLMO, acusado y apelante.

*Número:* CR-85-17 *Resuelto:* 30 de junio de 1988

68

*Jorge A. Marín Rodríguez,* abogado del apelante; *Rafael Ortiz Carrión, Procurador General, Miguel Santana Bagur* y *Josefa Román García, Procuradores Generales Auxiliares,* abogados de El Pueblo.

LA JUEZ ASOCIADA SEÑORA NAVEIRA DE RODÓN emitió la opinión del Tribunal.

El apelante Luis Ángel Fradera Olmo ("Guigua") fue declarado culpable en juicio por jurado celebrado en el Tribunal Superior, Sala de Utuado, por los delitos de robo y asesinato en primer grado y sentenciado a cumplir doce (12) años de prisión y cadena perpetua, respectivamente. Posteriormente, la sentencia en el caso de asesinato en primer grado fue modificada a la pena de noventa y nueve (99) años de prisión.

No conforme, en apelación plantea la comisión de once (11) errores. El primero, segundo y noveno sobre la admisión en evidencia de la confesión que el acusado le hiciera a su hermano. Alegó, en síntesis, que no hubo prueba de corroboración independiente suficiente. El resto de los errores están relacionados con la admisión en evidencia de prueba sobre la reputación del acusado.

De la exposición narrativa de la prueba se desprende que la investigación sobre la muerte a golpes de Don Inocencio Rivera Andújar comenzó a esclarecerse cuando el agente Gilberto Muñoz fue al Barrio Mameyes, donde "todo el mundo le decía que ésto tenía que ver con los hermanos Fradera". En su declaración, el agente Muñoz mencionó que entre las personas que entrevistó fue a Héctor Medina, conocido por "Junior", quien dijo no saber nada de este caso. La *defensa* en el contrainterrogatorio preguntó quién era Héctor Medina, a lo que el testigo contestó, "es un menor del Barrio Mameyes, que e[n u]na ocasión anterior participó con Angel Luis Fradera Olmo [el acusado] en un robo a un ciudadano que falleció. . . . [e]se caso se archivó por falta de interés del anciano". E.N.P., pág. 2.

El agente Muñoz continuó atestiguando que, después de entrevistar al Sr. Héctor Medina ("Junior"), se entrevistó con el Sr. Áxel Fradera Olmo, hermano del acusado. Esto lo hizo "porque tenía confidencias que [antes] ellos le habían hurtado un revólver y $1,100.00" a la víctima, Don Inocencio Rivera Andújar. Áxel Fradera admitió que fue él quien atracó a la víctima Inocencio Rivera y que eso fue para el 27 de febrero de 1983, en que le robaron $1,100 y un revólver en su residencia. "[S]e negó a cooperar" en cuanto a los delitos del caso de autos.

El agente Muñoz expresó, además, que procedió entonces a entrevistar al Sr. Carmelo Rodríguez Solís, quien le dijo que tenía información sobre la muerte de Don Inocencio Rivera Andújar. Declaró, además, que en una conversación que tuvo con Áxel éste le indicó que "había llamado a su hermano Guigua, desde Hato Rey a Bayamón y éste [el acusado] le dijo que le había dado unos golpes a Inocencio y que se le había ido la mano". Esta información hizo que se citara a los señores Áxel Fradera Olmo y Carmelo Rodríguez Solís a Fiscalía. Luego de habérsele hecho las advertencias legales, Áxel Fradera Olmo ofreció una declaración jurada sobre la

confesión de su hermano en relación con la muerte de Don Inocencio Rivera Andújar. La declaración jurada de Áxel Fradera Olmo, en lo pertinente, lee así:

Fiscal (F): ¿Testigo, conoció usted al Sr. Inocencio Rivera Andújar?

Testigo (T): Sí, lo conocí.

F: ¿Dónde vivía este señor?

T: Bo. Mameyes.

F: ¿Este señor era una persona de edad o era una persona joven?

T: Era una persona de edad.

F: ¿Tiene usted conocimiento de que Don Inocencio apareció muerto en el Bo. Mameyes de Utuado?

T: Sí.

F: ¿Relacionado con la muerte de Don Inocencio le informó usted algo al joven Carmelo Rodríguez Solís?

T: Sí, le informé.

F: ¿Tenga la bondad de informarme todo lo que usted sepa relacionado con la muerte de Don Inocencio Rivera Andújar?

T: Que un domingo después que Don Inocencio apareció muerto yo estaba en el negocio de Junior Bernacet en el Bo. Mameyes y del grupo que estábamos allí uno me dijo: "a tu hermano Guigua lo vieron por allí" y ya nosotros habíamos hablado de que a Don Inocencio lo habían encontrado muerto y descompuesto. Yo me quedé callado y no le dije nada, pero me quedé pensando y un día de la próxima semana cuando yo estaba en Río Piedras porque yo trabajaba por allá, lo llamé por teléfono pues yo le dije que si él se había enterado de lo que había pasado en el Barrio en relación con la muerte de Don Inocencio y él me dijo que sí que lo había sabido y yo le dije, que si él tenía que ver algo con eso porque a mí me habían dicho que a él lo habían visto por allí. Entonces Guigua me dijo, "*que él había ido allá abajo y que lo había agolpeado* [sic] *y después que le buscó los bolsi-*

*llos se fue, y que se le había ido la mano y que
Sencio [sic] se había quedado allí donde cayó."*
(Énfasis nuestro.)

En el juicio, Áxel negó que el contenido de la declaración fuera cierto y que le hubiera comentado algo sobre esto a Carmelo Rodríguez. Alegó que había prestado la declaración bajo coacción. No obstante, la declaración jurada fue admitida en evidencia como una declaración anterior de un testigo bajo la Regla 63 de Evidencia, 32 L.P.R.A. Ap. IV. Áxel declaró que tenía una amistad estrecha con Carmelo Rodríguez, quien era compañero de trabajo y de viaje.[1] De otra parte, Carmelo Rodríguez testificó que Áxel le informó que "había llamado a Guigua a Bayamón y le preguntó sobre la muerte de don Inocencio contestándole éste que le había dado un golpe, le quitó el dinero y lo dejó allí, que se le había ido la mano". E.N.P., pág. 6. Esto se lo comunicó Áxel en Río Piedras sin que él se lo hubiera preguntado.

También se presentó evidencia de que "[e]l cadáver de la víctima se encontró a unos 20 pies de un camino vecinal, pero que los árboles y la yerba alta no permitían verlo. La sangre alrededor del cuerpo y la cabeza aparentaba que lo habían matado allí. No había traza alguna de que lo hubieran traído hasta allí". Los pantalones de la víctima estaban al lado del cadáver con los bolsillos al revés y tenía un reloj en una trabilla. A unos treinta (30) pies del cadáver se encontraron los espejuelos que usaba la víctima. La patóloga Dra. Ofelia Vera declaró que la causa de la muerte fue trauma corporal en la cabeza y en el tórax, el cual tuvo que haber sido causado por un objeto contundente que le produjo fracturas en ambos lados de la cara, del esternón y costillas del lado derecho e izquierdo.

---

[1] Ambos viajaban juntos los fines de semana de Utuado a San Juan donde trabajaban.

Pasemos ahora a discutir los errores relacionados con la admisión en evidencia de la confesión del acusado.

I

 En nuestra jurisprudencia está firmemente establecida la llamada doctrina de corroboración del *corpus delicti.* Ésta requiere que las confesiones o admisiones en casos criminales sean corroboradas con prueba independiente. El propósito de la doctrina es proteger al acusado de confesiones o admisiones falsas. *Pueblo v. Campos Suárez,* 86 D.P.R. 310, 313, 315 (1962), opinión concurrente del Juez Asociado Señor Dávila; *Smith v. United States,* 348 U.S. 147 (1954). La doctrina de corroboración requiere que la confesión de un acusado sea corroborada con prueba *aliunde*[2] que tienda a establecer el *corpus delicti. Pueblo v. Hernández,* 75 D.P.R. 907, 915 (1954); *Pueblo v. Rivera,* 67 D.P.R. 297 (1947); *Pueblo v. Declet,* 65 D.P.R. 23 (1945); *Pueblo v. Acosta,* 57 D.P.R. 757 (1940); *Pueblo v. Almodóvar,* 46 D.P.R. 99 (1934); *Pueblo v. Méndez,* 41 D.P.R. 275 (1930); *El Pueblo v. Rodríguez,* 28 D.P.R. 501 (1920); *El Pueblo v. Rosado,* 17 D.P.R. 441 (1911).

 En *Pueblo v. Hernández,* supra, pág. 916, definimos la prueba del *corpus delicti* como aquella que demuestre: "(1) que se ha sufrido una pérdida o daño específico, y (2) que dicha pérdida o daño específico fué ocasionada por un agente criminal".

 Posteriormente, fuimos más explícitos en cuanto a la implantación de la doctrina de corroboración del *corpus delicti* en las confesiones. En *Pueblo v. Campos Suárez,* supra,

---

[2] Evidencia *aliunde* se define como aquella que proviene de otra fuente externa. *Black's Law Dictionary,* 5ta ed., Minnesota, Ed. West Publishing Co., 1979, pág. 68.

pág. 311, señalamos que "'[l]a evidencia de corroboración no tiene que ser suficiente, independientemente de las admisiones o manifestaciones para establecer el corpus delicti; es suficiente si la evidencia de corroboración tiende a *sostener los elementos esenciales admitidos* por el acusado en forma tal que justifique la determinación de su veracidad por un jurado'". (Énfasis nuestro.) Citando a *Martínez v. United States*, 295 F.2d 426 (10mo Cir. 1961).

Luego en *Pueblo v. Pérez Hernández*, 95 D.P.R. 919 (1968), reiteramos lo establecido en *Pueblo v. Campos Suárez*, supra, y añadimos que "[l]o que se requiere es que El Pueblo traiga evidencia sustancial independiente que tienda a establecer la *veracidad* de las admisiones". (Énfasis nuestro.) *Pueblo v. Pérez Hernández*, supra, pág. 922. También hicimos constar que no era necesario que la evidencia corroborativa estableciera la culpabilidad del acusado fuera de toda duda razonable, que evidencia circunstancial podría ser suficiente corroboración y que, cuando hay alguna evidencia *aliunde* tendiente a establecer el *corpus delicti*, la admisión podría ser considerada en relación con esa evidencia para establecer el *corpus delicti*. Después de los casos *Pueblo v. Campos Suárez*, supra, y *Pueblo v. Pérez Hernández*, supra, se ha discutido la doctrina de corroboración en los casos *Pueblo v. Santiago Sánchez*, 111 D.P.R. 379 (1981), Sentencia, y *Pueblo v. Hernández Osorio*, 112 D.P.R. 182 (1982), (Sentencia) opinión concurrente del Juez Asociado Señor Díaz Cruz, sin poderse lograr que una mayoría de este Tribunal se ponga de acuerdo en cuanto a los criterios específicos para la implantación de dicha doctrina a delitos graves.(3)

---

(3) La doctrina de corroboración proviene del derecho común anglosajón y se introdujo en nuestro derecho por vía de jurisprudencia. Para una amplia discusión del tema, refiérase a Comentario, *California's Corpus Delicti Rule: The*

En el caso de autos, la prueba de corroboración presentada consistió en que los bolsillos del pantalón del occiso estaban al revés, que la víctima murió debido a golpes causados con un objeto contundente, que había sangre alrededor del cuerpo y que el occiso fue encontrado a unos veinte (20) pies de un camino vecinal. Ciertamente esta prueba tiende a corroborar o sostener elementos esenciales admitidos por el acusado en la confesión, tales como que éste "había ido allá abajo y que ... había agolpeado [sic] [a la víctima] y después que le buscó los bolsillos se fue y que se le había ido la mano y que Sencio [sic] [la víctima] se había quedado allí donde cayó". A la luz de la prueba de corroboración presentada, podemos inferir la *veracidad* de la confesión que el acusado apelante le hizo a su hermano Áxel. *Pueblo v. Pérez Hernández*, supra.

En el caso de autos el Jurado evaluó la prueba independiente presentada y entendió que ésta cumplía con el requisito de corroboración del *corpus delicti*. Reiteradamente hemos señalado que los jurados son quienes normalmente están en mejores condiciones para aquilatar la prueba y, por ende, la apreciación que ellos hagan merece gran respeto. *Pueblo v. Cabán Torres*, 117 D.P.R. 645 (1986); *Pueblo v. Pagán Díaz*, 111 D.P.R. 608, 621 (1981); *Pueblo v. Ortiz Morales*, 86 D.P.R. 456, 466 (1962).

## II

Los otros señalamientos de error del apelante giran alrededor de la presentación de prueba sobre una acusación an-

---

*Case for Review and Clarification*, 20 U.C.L.A. L. Rev. 1054 (1973); VII *Wigmore on Evidence* Sec. 2070 (Chadbourn rev. 1978); Nota, *Confession Corroboration in New York: A Replacement for the Corpus Delicti Rule*, 46 Fordham L. Rev. 1205 (1978); Nota, *Developments in the Law—Confessions*, 79 Harv. L. Rev. 935 (1966); Nota, *Proof of the Corpus Delicti Aliunde the Defendant's Confession*, 103 U. Pa. L. Rev. 638 (1955).

terior contra el apelante relacionada con hechos similares al caso de autos. Esta prueba se presentó en tres (3) ocasiones diferentes durante el transcurso del juicio. El acusado alega que la prueba lo afectó perjudicialmente ante el Jurado. El error no se cometió.

Como regla general, evidencia del carácter de una persona o de un rasgo de su carácter no es admisible cuando se ofrece para probar que en una ocasión específica la persona actuó de conformidad con tal carácter. Véase Regla 20(A) de Evidencia, 32 L.P.R.A. Ap. IV. Una excepción a esa regla se presenta cuando el acusado "abre la puerta" de su carácter al Ministerio Público. Conforme a esta doctrina, cuando la defensa presenta prueba de cierto carácter del acusado para probar conducta específica de conformidad con la ocasión anterior —actuación que le está permitida por la Regla 20(A)(1) de Evidencia, *supra*— abre la puerta de su carácter al fiscal. Éste puede, entonces, refutar la evidencia de carácter presentada por la defensa y podrá contrainterrogarlo sobre conducta específica pertinente. Véanse: Regla 20(C) de Evidencia, 32 L.P.R.A. Ap. IV; *Pueblo v. Archeval*, 74 D.P.R. 512, 516 (1953); *Pueblo v. Padilla Arroyo*, 104 D.P.R. 103, 113 (1975); *Pueblo v. Hernández Pérez*, 93 D.P.R. 182, 185 (1966); *Pueblo v. Carrión Rivera*, 111 D.P.R. 825, 830–831 (1981); E.L. Chiesa, *Práctica Procesal Puertorriqueña, Evidencia*, San Juan, Pubs. J.T.S., 1984, Cap. IV, págs. 68–73; E.L. Chiesa, *Evidencia de carácter y de conducta específica bajo las Reglas de Evidencia de 1979*, XV Rev. Jur. U.I.A. 45, 51 (1980).

En el caso que nos ocupa, el Ministerio Público sentó a declarar como primer testigo de cargo al agente Gilberto Muñoz, quien investigó los hechos que se le imputan al acusado. En el contrainterrogatorio la representación legal del acusado apelante le preguntó quién era Héctor Medina ("Junior"). A esta pregunta de la defensa el agente contestó que era un menor del Barrio Mameyes que en una ocasión ante-

rior participó con el acusado en un robo a un ciudadano, el Sr. Gregorio Meléndez, que falleció pues tenía más de cien (100) años. Explicó que el caso fue archivado por falta de interés del anciano. E.N.P., pág. 2.

Por lo tanto, fue a preguntas de la propia defensa que surgió esa prueba que objeta ahora el apelante. No surge de la exposición narrativa de la prueba que el representante legal del acusado hubiera objetado esa prueba o intentara detener al testigo. Regla 4 de Evidencia, 32 L.P.R.A. Ap. IV; Chiesa, *Práctica Procesal Puertorriqueña, Evidencia, op. cit.*, Cap. 1, págs. 4–7. No surge que solicitara instrucciones en ese momento y éstas le fueran denegadas, o que no hubieran sido impartidas antes del Jurado retirarse a deliberar. En el expediente de apelación no consta una transcripción de las instrucciones que se impartieron al Jurado. Correspondía al apelante demostrar que el tribunal de instancia no actuó correctamente. *Pueblo v. Najul B[a]ez*, 111 D.P.R. 417, 423 (1981).

La segunda vez que se trajo prueba del acto específico anterior del acusado fue durante el contrainterrogatorio del testigo de reputación, Sr. Alberto Bernacet, presentado por la defensa. Específicamente declaró el señor Bernacet que conocía al acusado por veintisiete (27) años, que para él era una buena persona y su reputación era buena, y que no sabía que hubiera sido acusado de delito alguno. E.N.P., pág. 11. Así abrió el acusado la puerta para que el Ministerio Público pudiera preguntar sobre su carácter. Éste entonces podía refutar la evidencia de carácter presentada por la defensa. Las preguntas sobre la acusación anterior formuladas a ese testigo, que ahora objeta el apelante, iban dirigidas a desvirtuar lo dicho en el interrogatorio.(4) Regla 20(A)(2) de Evidencia,

---

(4) En la repregunta el testigo declaró, contrario a lo señalado por el apelante en su alegato, que se oyó decir que acusaron al apelante por asaltar a don Gregorio. E.N.P., pág. 11.

*supra*; *Pueblo v. Archeval*, supra; *Pueblo v. Padilla Arroyo*, supra. En *Pueblo v. Iturrino de Jesús*, 90 D.P.R. 706, 711 (1964), se cuestionó el permitir que se preguntara a un testigo de reputación del acusado sobre acusaciones que se habían presentado contra el acusado, pero de cuyos delitos salió absuelto o los casos fueron archivados. Allí expresamos que las preguntas eran admisibles, pues iban dirigidas a aducir prueba sobre delitos anteriores para desvirtuar lo dicho en el interrogatorio directo en relación con la buena reputación del apelante.

■ Por último, la tercera vez que se pasó prueba sobre actos específicos anteriores del acusado fue cuando el Ministerio Público presentó al testigo de reputación, José Rivera Ríos. Este testigo declaró que como agente de la Policía investigó la acusación anterior.[5] En este caso el tribunal no debió haber admitido esta prueba, pues no se dan las circunstancias que la hacen admisible bajo la Regla 20(C) de Evidencia, *supra*. Sin embargo, el error no fue perjudicial. La Regla 4 de Evidencia, *supra*, señala que no se revocará una sentencia por motivo de admisión errónea de evidencia, a menos que el tribunal entienda que ésta fue factor decisivo o sustancial en la sentencia cuya revocación se solicita. En el caso de autos se trata de prueba acumulativa. No se trata de prueba nueva que desconociera el Jurado. Desde el comienzo del procedimiento judicial la propia defensa, en su contrainterrogatorio, presentó prueba sobre el mismo incidente. A tenor con lo anterior, no podemos concluir que la presentación del testimonio del agente Rivera Ríos fue un factor deci-

---

[5] El agente Ríos declaró que investigó una querella de robo por el Sr. Gregorio Meléndez, que el acusado fue denunciado y que se vio la vista preliminar y hubo causa probable. La prueba presentada en cuanto a la razón por la cual archivó dicho caso es contradictoria. El agente Ríos señaló que se archivó el caso porque la víctima murió. Por otro lado, el agente Muñoz declaró, a preguntas de la defensa, que el caso se archivó por falta de interés de la víctima.

sivo o sustancial en la sentencia de instancia. *Pueblo v. Ríos Nogueras*, 114 D.P.R. 256, 261 (1983); *Pueblo v. Mangual Hernández*, 111 D.P.R. 136, 145 (1981). *Pueblo v. Calviño Cereijo*, 110 D.P.R. 691 (1981); Chiesa, *Práctica Procesal Puertorriqueña, Evidencia, op. cit.*, Cap. 1, págs. 8–9.

En el caso de autos el Jurado sopesó la prueba y quedó convencido de la culpabilidad del acusado más allá de toda duda razonable. Ciertamente tuvo ante sí prueba suficiente para poder determinar la culpabilidad del apelante. En vista de que no surge constancia alguna que dé lugar a inferir error manifiesto, prejuicio, parcialidad o pasión, no se debe alterar la apreciación de la prueba por el Jurado. *Pueblo v. Suárez Fernández*, 116 D.P.R. 842 (1986); *Pueblo v. Mendoza Lozada*, 120 D.P.R. 815 (1988); *Pueblo v. De Jesús Rivera*, 113 D.P.R. 817 (1983). Tampoco intervendremos con la apreciación y adjudicación de la credibilidad de los testigos, a menos que "un análisis integral de dicha prueba cause en nuestro ánimo una insatisfacción o intranquilidad de conciencia tal que se estremezca nuestro sentido básico de justicia . . .". *Pueblo v. Cabán Torres*, supra, pág. 648.

Por todas las razones antes expuestas, *se dictará sentencia que confirme la aquí apelada.*

Los Jueces Asociados Señores Negrón García, Rebollo López y Hernández Denton concurren sin opinión escrita.