EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* RAFAEL DONES, acusado y apelante.

*Número:* CR-72-151          *Resuelto:* 25 de marzo de 1974

*José Torres Ortiz, Francisco Rebollo, Jr. y Luis Felipe Benicio Sánchez*, abogados del apelante; *J. F. Rodríguez Rivera* y *Peter Ortiz*, Procuradores Generales Interinos, *Federico*

*Rodríguez Gelpí* y *Rurico E. Rivera Rivera, Procuradores Generales Auxiliares,* abogados de El Pueblo.

EL JUEZ ASOCIADO SEÑOR DÍAZ CRUZ emitió la opinión del Tribunal.

La impugnación de un testigo en cuanto a su veracidad e integridad está regulada en Puerto Rico por las siguientes disposiciones legales:

Art. 21 Ley de Evidencia (Art. 383 del Código de Enjuiciamiento Civil—32 L.P.R.A. sec. 1664).

"Se presume que un testigo dice la verdad. Esta presunción, sin embargo, puede ser rechazada, por la forma en que declare, por el carácter de su declaración o por evidencia que afecte su veracidad, honradez, integridad, o móviles, o por evidencia contradictoria."

Art. 34 Ley de Evidencia (Art. 396 del Código de Enjuiciamiento Civil—32 L.P.R.A. sec. 1677).

"La evidencia deberá corresponder a las alegaciones esenciales, y ser pertinente a la cuestión que se ventila. Queda, sin embargo, a arbitrio del tribunal permitir la investigación de un hecho accesorio siempre que éste estuviere directamente relacionado con la cuestión en controversia, y fuere necesario para su debida determinación o afectase la credibilidad de un testigo."

Art. 35, inciso 14 Ley de Evidencia (Art. 397 del Código de Enjuiciamiento Civil—32 L.P.R.A. sec. 1678).

"De conformidad con las precedentes disposiciones, podrá presentarse en un juicio evidencia de los hechos siguientes:

.     .     .     .     .     .     .     .

14.—Los hechos que sirvieren para demostrar la credibilidad de un testigo, según lo explicado en la sec. 1664 de este título."

Art. 158 Ley de Evidencia (Art. 520 del Código de Enjuiciamiento Civil—32 L.P.R.A. sec. 2150).

"Un testigo podrá ser tachado por la parte contra quien fuere llamado, mediante evidencia contradictoria, o de que su reputación en cuanto a veracidad, honradez o integridad es generalmente mala; pero no con evidencia de determinados actos repro-

bables, salvo que podrá probarse mediante el examen del testigo, o la anotación de la sentencia, que fue convicto de delito grave."

Regla 131 de Procedimiento Criminal.

"Excepto lo que en contrario se disponga por la ley y por estas reglas, en todos los juicios el testimonio de los testigos será oral y en sesión pública y la admisibilidad de evidencia y la competencia y privilegios de los testigos se regirán por las disposiciones de la Ley de Evidencia de Puerto Rico."

El apelante, hoy convicto por el solo testimonio de un agente encubierto en tres cargos por infracción de la Ley de Narcóticos y sentenciado a la pena de 10 a 18 años de presidio en cada cargo, ofreció en el juicio para impugnar la veracidad del testigo acusador, [1] evidencia de actos en que éste había acusado falsamente a otra persona por venta y posesión de drogas, en cuyo juicio se produjo una fuerte reprimenda del juez que presidía la vista imputando al referido agente los delitos de perjurio y malversación de fondos del Estado; el informe de la investigación practicada por el Cuerpo de Investigación Criminal sobre dicha conducta del agente; testimonios de dos jueces superiores ante quienes dicho agente había mentido en juicio; y la declaración de un tercer juez superior sobre otros actos de mendacidad y falsedad del referido agente encubierto. No se admitió esta evidencia por lo que no llegó a consideración del jurado. Entendió el juez a quo que sólo podía admitir prueba de mala reputación pero no de hechos aislados.

Esta decisión del juez de instancia sigue una línea de decisiones emitidas por este Tribunal [2] que se ciñen a interpretar el Art. 158 de la Ley de Evidencia (32 L.P.R.A. sec. 2150) sin armonizar sus disposiciones con las de artículos

---

[1] Su nombre, Pablo N. Padilla.

[2] *Pueblo v. Belardo*, 50 D.P.R. 512 (1936); *Pueblo v. Vélez*, 51 D.P.R. 665 (1937); *Pueblo v. Rodríguez*, 62 D.P.R. 778 (1944); *Pueblo v. González*, 80 D.P.R. 208 (1958); *Pueblo v. Verdejo Meléndez*, 88 D.P.R. 207, 217 (1963); *Pueblo v. Rosario Cancel*, 90 D.P.R. 168 (1964); *Pueblo v. Hernández Pérez*, 93 D.P.R. 182 (1966).

germanos como lo son los Arts. 21, 34 y 35(14) ya citados. Los estatutos se interpretan en su conjunto y no por secciones aisladas. Al interpretar una ley no deben tomarse aisladamente algunas de sus secciones, párrafos u oraciones. Debe hacerse tomando en consideración todo su contexto. Art. 18 del Código Civil (31 L.P.R.A. sec. 18) ; *Sales* v. *Samac Motor Corp.*, 92 D.P.R. 529, 540 (1965—Rigau, J.) ; *Descartes* v. *Tribunal de Contribuciones*, 71 D.P.R. 248 (1950) ; *Pueblo* v. *Mantilla*, 71 D.P.R. 36, 42 (1950—Snyder, J.). Entre dos interpretaciones de una ley las cortes deben atemperarse a aquélla que tenga el efecto de armonizar disposiciones de la misma en aparente conflicto. *Banuchi* v. *Corte*, 64 D.P.R. 112, 120 (1944—Todd, Jr., J.).

La regla seguida en *Pueblo* v. *Hernández Pérez*, supra, excluyendo evidencia de determinados actos como base para tachar la integridad del testigo, tuvo su razón de ser en una época, pero ha sobrevivido su propósito. Fue una necesidad para proteger la reputación contra acusaciones injustas e infundadas. Ahora que se abre una avenida creciente hacia el descubrimiento de prueba en el campo de lo criminal, en que se propone la restricción del privilegio en las comunicaciones, (3) la admisión masiva de prueba de referencia (4) y hasta se cuestiona la confidencialidad de la Presidencia de los Estados Unidos, resultaría anticlimático aferrarnos al primitivismo inquisitorial. El procedimiento criminal evoluciona hacia la presentación cabal, franca y completa de los hechos que ha penetrado notablemente en el sistema de enjuiciamiento civil. Todo acusado que tiene su libertad en peligro debe tener al alcance de su mano los medios más amplios para demostrar que su acusador es un truhán, falto de integridad e indigno de crédito. Mientras más cortapisas y restricciones se opongan a esta prueba, mayor es el riesgo de que un testimo-

---

(3) Reglas 204 y ss. del proyecto de Reglas de Evidencia, 1958.

(4) Reglas 502 y ss. del proyecto de Reglas de Evidencia, 1958.

nio mendaz y falso prevalezca en corte adulterando y deshon-
rando la justicia, convirtiendo el fallo judicial en trágico pro-
ducto elaborado de la perversidad. A las instituciones, como a
los hombres, se les endurecen las arterias con el paso del
tiempo y se tornan obsoletas, pero aquéllas tienen la ventaja de
renovarse con ideas frescas y conceptos nuevos. Esto se logra
en cuanto concierne al método de juzgar abriendo cada día
más ventanas a la verdad, aboliendo la fijación y el inmovi-
lismo procesal que sofoca la justicia.

Para asegurar el limpio curso de la justicia basta con
insuflar validez contemporánea a los preceptos comprendidos
en los Arts. 21, 34, 35 y 158 de la Ley de Evidencia interpre-
tados integralmente. Todo cuanto hay que hacer es impartir
vitalidad a las disposiciones de la Ley de Evidencia en el
contexto general del estatuto y como un todo armónico, redu-
ciendo el Art. 158 que hasta ahora había recibido una atención
aisladora, a su rol de precepto integrado a un ordenamiento
mayor dirigido a la búsqueda de la verdad en el tribunal de
justicia. La interpretación judicial tiene la virtud de poner en
marcha las ideas que han estado invernando en los viejos
preceptos, en espera de un nuevo germinar que anuncie su
valía.

A modo de redescubrimiento en el viejo texto del
Art. 21 de la Ley de Evidencia hallaremos que el concepto de
que un testigo puede ser impugnado por la forma en que de-
clare, por el carácter de su declaración o por evidencia que
afecte su veracidad, honradez, integridad o móviles, admite
antecedentes notorios de mendacidad y falsedad como elemen-
tos de impugnación del carácter o integridad del testigo. La
admisión de esta evidencia, naturalmente, debe regularse por
las normas usuales de relevancia a la cuestión que cada caso
plantea. (5) Podrá inquirirse en el contrainterrogatorio sobre

---

(5) Wigmore *On Evidence*, III-A., sec. 987, págs. 911–912, Ed. Chad-
bourn (1970).

dichos antecedentes o hechos específicos vinculados a la credibilidad, si no son remotos, y presentarse evidencia extrínseca de los mismos para impugnar la veracidad del testigo. Asimismo podrá presentarse, a los expresados fines, evidencia de convicción del testigo por delito que sin importar su calificación implique deshonestidad o perjurio. No estamos abriendo una compuerta al derrame indiscriminado de evidencia impertinente, extraña al asunto justiciable. La prueba para impugnar al testigo deberá fundarse en actos y hechos específicos y deberá limitarse a las materias relacionadas con veracidad o falsedad. Tampoco habrá de permitirse la introducción en evidencia de incidentes triviales e intrascendentes pues con ello se desnaturalizaría el juicio convirtiéndolo en una pesquisa biográfica del testigo. Toda vez que este tipo de prueba evade la fácil clasificación, el sano e ilustrado criterio jurídico del juez de instancia regulado por las normas ahora enunciadas ha de suplir en cada caso la evaluación para admitir o rechazar la evidencia.

Como ejemplo de criterio moderno relativo a las normas de relevancia y función moderadora de la discreción judicial, la más reciente edición de Wigmore cita el siguiente pasaje de la opinión en *Territory* v. *Chávez*, 8 N.M. 528, 531; 45 Pac. 1107, 1108 (1896):

"El extremo hasta el cual se permitirá el contrainterrogatorio indudablemente depende en gran medida de la discreción del tribunal que juzga; y es difícil trazar una línea indicativa de dónde comienza y dónde termina la discreción legal para admitir o excluir este testimonio. Debe irse en busca de la verdad. El asalto del testigo mediante contrainterrogatorio sobre materias colaterales no será permitido para complacer el capricho o el disgusto de aquéllos contra quienes declara; como tampoco se permitirá la intrusión en la vida privada sin otro propósito calculado que herir los sentimientos, humillar o poner en aprietos al testigo . . . pero debe diferenciarse con claridad entre aquellas materias objeto de contrainterrogatorio que meramente promueven prejuicio contra el testigo, o que tienden a humillarlo o herir sus sentimientos, y aquellas materias que por

otro lado van dirigidas, en grado importante y relevante, a influir el crédito que pueda darse a su declaración. En cuanto a esta última clasificación, no podrá librarse al testigo de revelar su propio carácter bajo contrainterrogatorio, y a tales fines podrá ser interrogado sobre actos específicos y sucesos de su vida pasada; y si no fueren muy remotos en tiempo y estén claramente vinculados a su credibilidad en un aspecto importante y relevante, constituiría error excluirlos. Hasta dónde la justicia requiera llevar estas encuestas, cuánto tiempo se destinará a las mismas, qué será excluido por remoto o por trivial e intrascendente, dependerá en cierta medida de las circunstancias de cada caso; y estas son cuestiones dirigidas fundamentalmente a la discreción del tribunal de instancia, pero esa discreción debe ejercitarse con liberalidad." III-A, Wigmore, *Evidence,* sec. 983, pág. 848 (Chadbourn rev. 1970).

La nueva interpretación se acerca más a la realidad de que no son los felones convictos los únicos detractores de la verdad. La ruina moral y la conducta abyecta no siempre se anuncian por una sentencia por delito grave. Acusa más corrupción en dimensiones de credibilidad un individuo simplemente reprendido por el juez en corte abierta por la evidente falsedad de su testimonio, que aquél que cegado por la pasión o los celos da muerte a otro ser humano y es convicto de asesinato. No hay lugar para discriminar selectivamente adjudicando criterios de credibilidad entre convictos y no convictos. Incurriríamos en el prototipo de "clasificación sospechosa" detrimental y lesivo no ya para un individuo o grupo sino para todo el sistema judicial.

No hay choque entre lo que ahora resolvemos y el Art. 158 de la Ley de Evidencia (32 L.P.R.A. sec. 2150) que excluye evidencia de determinados actos reprobables pues la ubicación de esa frase en el contexto del referido artículo en contraposición a la convicción de delito grave es indicio de su aplicación restringida a aquellos actos reprobables que no tienen relevancia ni vínculo con la cuestión a decidir. El tenor de dicho artículo no ocupa el campo de la relevancia por lo que el mismo debe leerse como una proscripción de crímenes o actos no rela-

cionados en su esencia con la cuestión justiciable que cada caso plantea.

█ Si leyéramos el Art. 158 de otro modo se manifestaría una contradicción intrínseca; por un lado dice que podrá tacharse al testigo mediante evidencia de que su reputación en cuanto a veracidad, honradez o integridad es generalmente mala y por otro lado prohibe evidencia de actos reprobables. Si los actos y conducta de la persona, al ser conocidos del público son los que dan contorno a su reputación, ¿cómo admitir la conclusión final, la opinión informada y al mismo tiempo rechazar los hechos reales y positivos que justifican esa conclusión? [6] Por no creer que el legislador se propusiera fomentar esa situación absurda hemos de arribar al criterio de que los llamados actos reprobables (*wrongful acts*, en el texto inglés) son actuaciones triviales e intrascendentes incapaces de dejar huella definidora de la buena o mala fama de su autor. De otro modo se derrotaría el propósito manifiesto del Art. 34 de la Ley de Evidencia (32 L.P.L.A. sec. 1677) que permite la investigación de un hecho accesorio siempre que éste estuviere directamente relacionado con la cuestión en controversia y fuere necesario para su debida determinación o afectase la credibilidad de un testigo; y quedaría el acusado a merced del más inescrupuloso de los testigos de cargo. [7]

No hay que temer que esta apertura a la reforma que no tiene más efecto que buscar el justo equilibrio, debilite

---

[6] Las reglas de evidencia anglo-americanas ocasionalmente han tomado giros muy curiosos en el curso de su desarrollo; pero nunca lograron algo tan curioso para cerrar el paso a la luz evidencial como cuando decidieron excluir el testimonio de una persona que sabe tanto como es humanamente posible sobre el carácter de otra, para admitir en su lugar el producto irresponsable, de segunda mano, de conjeturas múltiples y chismes que denominamos "reputación". VII Wigmore, 1986 Ed. 1940, a la pág. 167.

[7] La dignidad del Estado no ha de permitir la convicción de una persona mediante testimonio corrupto. *Mesarosh* v. *United States*, 352 U.S. 1; 1 L.Ed.2d 1; *United States* v. *Chisum*, 436 F.2d 645.

la resuelta lucha contra la delincuencia. La capacidad de defensa social y represión del crimen en los países democráticos radica en la sabiduría de sus leyes y en la idoneidad de sus funcionarios; jamás en un procedimiento criminal mutilado y opresivo. No es llegado el momento de ofrecer la justicia como cordero de sacrificio en aras de la paz y la seguridad del pueblo. La gran fuerza de la Ley y de las cortes como espada protectora de la ciudadanía será más respetable cuanto más diáfanos y esclarecidos sean sus métodos de enjuiciamiento.

La confección de reglas de evidencia no es faena para la Legislatura sino una esencialmente judicial (I Wigmore *On Evidence*, pág. 251 y ss., 3ra. ed.), que ha tenido un modesto desarrollo jurisprudencial en nuestra patria. Ya antes este Tribunal, sin citarlo inyectó el concepto de relevancia en la interpretación del Art. 158 de la Ley de Evidencia y no se detuvo ante su exclusión de "determinados actos reprobables" cuando resolvió que en los casos de muerte en que el acusado alega defensa propia, podría admitirse prueba de convicciones de la víctima por delitos de sangre para establecer el carácter peligroso del occiso. *Pueblo* v. *Cruz*, 65 D.P.R. 172 (1945), De Jesús, J., Wigmore, citado con aprobación por el Juez De Jesús, a la pág. 179 de su opinión se expresa así:

"El estado actual de la ley en términos generales favorece la admisibilidad de tales actos [específicos de violencia].

Sin embargo, en la mayoría de las jurisdicciones esa evidencia fue durante largo tiempo absolutamente excluida. En algunos casos esto se debía a que se trataba de probar el carácter del interfecto objetivamente por actos específicos . . . pero el verdadero propósito de esa evidencia es meramente demostrar una conducta tal que naturalmente hubiera producido aprehensión, bien indicara objetivamente un rasgo permanente del carácter o no. Sin duda, ciertas analogías en la ley (aparte de lo que el sentido común indica) favorecen la admisibilidad de esa evidencia; porque si actos nocivos específicos de un animal son per-

tinentes para demostrar que su dueño tenía conocimiento de sus resabios (*viciousness*) . . . y si un acto específico de mala conducta de un empleado es pertinente para demostrar que su patrono tenía conocimiento de su incompetencia . . . entonces, actos espícíficos de inescrupulosa violencia muy bien pueden considerarse pertinentes para demostrar aprehensión de ser atacado por esa persona. La verdadera solución consiste en ejercitar discreción y admitir tales actos específicos cuando el sentido común nos indique que pudieron legítimamente producir aprehensión en el acusado." 2 Wigmore *On Evidence,* sec. 248, pág. 61, 3ra. ed. 1940.

Dice el Art. 18 de la Ley de Evidencia (32 L.P.R.A. sec. 1661) que la evidencia directa de un testigo que merezca entero crédito, es prueba suficiente de cualquier hecho, salvo perjurio o traición. Al amparo de este precepto funciona el agente encubierto, se establece la paternidad, y en fin podrán probarse todos los delitos con excepción de un reducidísimo número que exige corroboración, y aun ésta ya ha perdido considerable favor en la penología contemporánea y está en vías de desaparecer en lo que respecta a los delitos de seducción y violación. ¿Qué sentido hace que ese solo testigo, cuando fuere mendaz y corrupto sea el intocable instrumento de la justicia porque jamás ha sido convicto por delito grave (*felony*)? Debe cesar de inmediato el riesgo a que se expone la calidad de justicia que se hace al pueblo cuando ha de depender para descubrir la deshonestidad y el perjurio, de que el testigo voluntariamente "abra el campo" al enjuiciamiento de sus turbios antecedentes de falsedad. La libertad del encausado no puede quedar en última instancia a merced de un mentiroso.

Incidió el tribunal a quo según señalado al rechazar la evidencia ofrecida para impugnar la credibilidad del testigo.

*Se revocará la sentencia apelada, y se remitirá el expediente al tribunal de instancia para la celebración de nuevo juicio en el cual deberán seguirse procedimientos consistes con esta opinión.*

El Juez Presidente Señor Pérez Pimentel y el Juez Asociado Señor Rigau, no intervinieron.