EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* FRANCISCO ALVAREZ ROSARIO, acusado y apelante.

*Número:* CR-76-148 *Resuelto:* 30 de noviembre de 1978

---

114

*Benigno Alicea Alicea, Wilfredo Rodríguez Figueroa,* abogados del apelante; *Roberto Armstrong, Jr., Procurador General Interino,* y *Ricardo Alegría Pons, Procurador General Auxiliar,* abogados de El Pueblo.

EL JUEZ ASOCIADO SEÑOR IRIZARRY YUNQUÉ emitió la opinión del Tribunal.

Mediante veredicto por mayoría de diez a dos, un jurado halló al apelante culpable del delito de falsificación. Apela de la sentencia que le condenó a una pena indeterminada de cinco a diez años de prisión. Alega la comisión de un solo error, a saber, que so pretexto de impugnar su credibilidad mientras testificaba a su favor, se permitió por sobre su oportuna objeción, y sin que él hubiese ofrecido prueba para sostener su credibilidad, que el fiscal le interrogase sobre un delito de hurto mayor cometido por el apelante nueve años antes.

Este planteamiento obliga a examinar nuestra decisión en *Pueblo* v. *Dones,* 102 D.P.R. 118 (1974), en cuanto se refiere al acusado que declare como testigo a su favor. En *Dones* interpretamos el Art. 158 de la Ley de Evidencia, 32

L.P.R.A. sec. 2150, (¹) en el sentido de que es permisible tachar la veracidad de un testigo mediante prueba de antecedentes o actos específicos en la vida del testigo vinculados a su credibilidad y que no sean remotos, y mediante prueba de convicciones de delitos que, sin importar su calificación, impliquen deshonestidad o perjurio. Resolvemos que cuando el acusado opta por prestar testimonio durante el juicio, su veracidad puede ser tachada bajo el Art. 158 citado, en la misma forma que lo puede ser cualquier otro testigo y en la extensión que reconocimos en *Pueblo* v. *Dones*, supra, sujeto ello, en cuanto se refiere a previas convicciones, a que se determine que su valor probatorio es sustancialmente mayor que su efecto perjudicial.

■ Señalamos en *Dones* que el Art. 158 de la Ley de Evidencia debe interpretarse en armonía con los Arts. 21, 34 y 35 de dicha ley, 32 L.P.R.A. secs. 1664, 1677 y 1678, respectivamente, (²) que regulan lo concerniente a la impugnación

---

(¹) Dicho artículo dispone:

"Un testigo podrá ser tachado por la parte contra quien fuere llamado, mediante evidencia contradictoria, o de que su reputación en cuanto a veracidad, honradez o integridad es generalmente mala; pero no con evidencia de determinados actos reprobables, salvo que podrá probarse mediante el examen del testigo, o la anotación de la sentencia, que fue convicto de delito grave."

(²) Los citados artículos disponen:

"Se presume que un testigo dice la verdad. Esta presunción, sin embargo, puede ser rechazada, por la forma en que declare, por el carácter de su declaración o por evidencia que afecte su veracidad, honradez, integridad o móviles, o por evidencia contradictoria."

"La evidencia deberá corresponder a las alegaciones esenciales y ser pertinentes a la cuestión que se ventila. Queda, sin embargo, a arbitrio del tribunal, permitir la investigación de un hecho accesorio siempre que éste estuviere directamente relacionado con la cuestión en controversia, y fuere necesario para su debida determinación o afectase la credibilidad de un testigo."

"De conformidad con las precedentes disposiciones, podrá presentarse en un juicio evidencia de los hechos siguientes:

1. El hecho exacto en controversia.

2. El acto, declaración o admisión de una parte, como evidencia contra la misma.

de la veracidad de un testigo. Resalta en todas dichas disposiciones el principio básico de que la prueba, para ser admisible, debe ser pertinente a la cuestión en controversia. Dijimos (pág. 123):

"... La admisión de esta evidencia, naturalmente, debe regularse por las normas usuales de relevancia a la cuestión que cada caso plantea. Podrá inquirirse en el contrainterrogatorio sobre

3. El acto o declaración de otra persona, en presencia y bajo la observación de una parte, y la conducta de ésta, relacionada con dicho acto o declaración.

4. El acto o declaración, verbal o escrito, de una persona que hubiere fallecido, o se hallare fuera de la jurisdicción del tribunal, con referencia al linaje, nacimiento, ascendencia, edad, matrimonio, muerte o parentesco, de cualquiera persona relacionada por sangre o matrimonio con dicha persona; el acto realizado, o declaración hecha, por un difunto, contra su interés, respecto a sus bienes.

5. Después de probada la existencia de una sociedad o agencia, el acto o declaración de un socio o agente de la parte, dentro del objeto de la sociedad o agencia y durante su existencia.

6. El testimonio de un testigo que hubiere fallecido, o se hallare fuera de la jurisdicción, o estuviere imposibilitado para testificar, prestado en una causa anterior entre las mismas partes, y referente al mismo asunto.

7. La opinión de un testigo respecto a la identidad o carácter de letra de una persona cuando conozca a la persona y su carácter de letra; su opinión sobre una cuestión de ciencia, arte, o comercio, cuando fuere perito en la materia.

8. La opinión de un testigo, firmante de un escrito, cuya validez se disputare, respecto a la sanidad mental del otorgante.

9. La fama pública existente antes de la controversia, referente a hechos de interés público o general ocurridos con anterioridad de más de treinta años.

10. El uso o costumbre para explicar el verdadero carácter de un acto, contrato o documento, cuando este carácter verdadero no pudiese de otro modo esclarecerse; pero el uso nunca es admisible, excepto como medio de interpretación.

11. Los monumentos o inscripciones en sitios públicos, como evidencia de fama común; y las notas o asientos en libros de familia o cartas genealógicas, grabados en sortijas, retratos de familia y objetos análogos, como evidencia de linaje, nacimiento, ascendencia, edad, matrimonio, muerte, o parentesco de cualquier miembro de dicha familia.

12. El contenido de un escrito, cuando la evidencia oral del mismo fuere admisible.

13. Cualesquiera otros hechos de los cuales los hechos en controversia se presumieren o pudieren lógicamente inferirse.

14. Los hechos que sirvieren para demostrar la credibilidad de un testigo, según lo explicado en la sec. 1664 de este título."

dichos antecedentes o hechos específicos vinculados a la credibilidad, si no son remotos, y presentarse evidencia extrínseca de los mismos para impugnar la veracidad del testigo. Asimismo podrá presentarse, a los expresados fines, evidencia de convicción del testigo por delito que sin importar su calificación implique deshonestidad o perjurio. No estamos abriendo una compuerta al derrame indiscriminado de evidencia impertinente, extraña al asunto justiciable. La prueba para impugnar al testigo deberá fundarse en actos y hechos específicos y deberá limitarse a las materias relacionadas con veracidad o falsedad."

■ La práctica seguida antes de nuestra decisión en *Dones* de admitir indiscriminadamente prueba de previas convicciones por delitos graves, no importa que no implicaran deshonestidad o perjurio, como medio de tachar la veracidad de un testigo, halla sus raíces históricas en el Derecho Romano y en el anglosajón o *Common Law*. En el antiguo Derecho Romano la convicción de delito como consecuencia de un proceso público significaba para el convicto la "infamia" o pérdida de la personalidad. Schofield, *Cruel and Unusual Punishment*, 5 Ill. L. Rev. 321, 329 (1911). Ello llevaba consigo la pérdida de varios derechos ciudadanos, incluyendo poder ser testigo. Igual ocurría en el Derecho anglosajón. McCormick, *On Evidence*, 2da. ed., 1972, sec. 43; 2 Wigmore, *On Evidence*, 3ra. ed., 1940, sec. 520; *Pueblo* v. *Padilla Arroyo*, 104 D.P.R. 103, 110 (1975). La norma era justificada a base de la "depravación moral" de los convictos de delito. Se decía: "No se puede esperar que de ellos salga la verdad, dada su naturaleza abyecta." 2 Wigmore, *op. cit.*, sec. 519.(3)

■ Aunque en la evolución del Derecho probatorio se descartó la práctica de considerar inhábil como testigo a quien

---

(3) Se cita a Starkie, *Evidence*, 1824, sec. 83, que decía:

"Since the object of the oath is to bind the conscience of the witness . . . it follows also that the testimony of a person who by the turpitude of his conduct has shown that he is regardless of all laws both human and divine ought not to be received, for it cannot reasonably be expected that such a person would regard the obligation of an oath."

ha sido convicto de delito, quedó como rémora de su desarrollo la práctica de considerar indigno de crédito a quien cometiera en alguna ocasión algún delito grave sin importar su naturaleza. Descartamos tal práctica en *Dones* al limitar la prueba de convicciones anteriores, para fines de impugnación, a aquellos delitos, no importa si graves o no, que impliquen deshonestidad o perjurio y que no sean remotos. Véase *Pueblo v. Padilla Arroyo*, supra, a la pág. 115. La persona que una vez fue convicta de delito y pagó por ello a la sociedad no se considera sellada con estigma de mendacidad. Así tiene que ser en un sistema que postula como derechos fundamentales del ser humano, entre otros, en consonancia con su esencial dignidad, el derecho a la vida y a la libertad, el derecho a protección contra ataques abusivos a su honra y a su reputación, y el derecho al disfrute pleno de los derechos civiles una vez la persona convicta de delito ha cumplido la pena impuesta. Carta de Derechos, Secs. 1, 7, 8 y 12.

 Cuando una persona imputada de delito opta por prestar testimonio en su propia causa, esos principios que nuestra Constitución califica de fundamentales cobran mayor vigencia y hay que ser más celosos y estrictos en su observancia. La privación o restricción de la libertad del acusado, en que puede desembocar el proceso criminal, ha de lograrse únicamente mediante un juicio justo e imparcial en que se destruya más allá de duda razonable la presunción de su inocencia. Por eso, aunque un acusado renuncia a su derecho a no incriminarse cuando presta testimonio a su favor y está sujeto a las mismas reglas que cualquier testigo respecto a la investigación de su credibilidad, debe garantizarse que la prueba de previas convicciones, que fuere admisible en el caso de cualquier testigo, no resulte tan perjudicial al acusado que sea determinante en que recaiga un fallo condenatorio. Todo acusado tiene el derecho constitucional a prestar testimonio a su favor. Debe impedirse que la prueba de previas convicciones se convierta en una penalidad por hacer uso de ese

derecho. Véanse *Griffin* v. *California*, 380 U.S. 609, 614 (1965), y *State* v. *Santiago*, 492 P.2d 657 (Cal. 1971).

■ El peligro de permitir que se impugne la credibilidad del acusado que opta por declarar en su propia defensa mediante prueba de previas convicciones, particularmente en casos ventilados ante jurado, es que se utilice la prueba de tales previas convicciones como indicio de su culpabilidad, y a base de tal prueba se resuelva contra el acusado la duda sobre su inocencia. Dijimos en *Padilla Arroyo*, supra, págs. 110–112:

"Desde hace varias décadas se viene cuestionando la conveniencia y aun la constitucionalidad de esta norma. Ladd, *Credibility Tests—Current Trends*, 89 U. Pa. L. Rev. 166 (1940). En su estudio sobre el jurado norteamericano, Kalven y Zeisel demuestran el extraordinario efecto inhibitorio de la regla en cuestión. En la muestra estudiada por ellos, los acusados sin récord penal previo que resolvieron sentarse en la silla de testigos excedieron en 37 por ciento a los que tomaron igual resolución a pesar de contar con condenas anteriores. Kalven and Zeisel, *The American Jury*, 1966, págs. 160–161, nota 14. En los casos en que se permitió el uso de condenas previas para impugnar la credibilidad del acusado el porcentaje de veredictos de culpabilidad aumentó un 27 por ciento, Kalven and Zeisel, *supra*, 160, dato que ha suscitado graves dudas sobre si se está vulnerando en estas situaciones el derecho a un juicio justo e imparcial. Spector, R. G., *Impeachment Through Past Convictions: A Time for Reform*, 8 De Paul L. Rev. 1, 5, nota 15 (1968); Note, *Constitutional Problems Inherent in the Admissibility of Prior Record Conviction Evidence for the Purpose of Impeaching the Credibility of the Defendant Witness*, 37 U. Cinc. L. Rev. 168 (1968).

El movimiento a favor de la rigurosa restricción o aun de la abolición de la norma ha sido extenso.

Las Reglas Uniformes de Evidencia redactadas en 1953 y aprobadas por el Colegio de Abogados de Estados Unidos, *3 Práctica Forense Puertorriqueña* 313, Regla 21, permiten únicamente, para impugnar la credibilidad de un testigo, la presentación de prueba relativa a sentencias penales anteriores indicativas de deshonestidad o perjurio. Las Reglas Uniformes se fundan a su vez en este respecto en el Código Modelo de Evidencia

del Instituto Americano del Derecho, Regla 106. Goodhart, *A Changing Approach to the Law of Evidence,* 51 Va. L. Rev. 759, 778 (1965).

Las nuevas Reglas Federales de Evidencia, aprobadas por el Congreso de los Estados Unidos el 2 de enero de 1975, Ley Pública 93–595, 93° Cong., 43 U.S. L. W. 137, 140, reflejan estas preocupaciones. La Regla 609 (a) únicamente permite que se ataque la credibilidad de un testigo con prueba de crímenes anteriores en caso de delitos que envuelvan deshonestidad o perjurio o que sean castigables con prisión en exceso de un año y el tribunal determine que el valor probativo de la evidencia es más alto que el perjuicio que pueda causársele al acusado. Este último criterio, que envuelve sopesar los intereses envueltos, se había establecido antes por jurisprudencia en algunas jurisdicciones. *Luck* v. *United States,* 348 F.2d 763 (D.C. Cir. 1965); *Brown* v. *United States,* 370 F.2d 242 (D.C. Cir. 1966); *United States* v. *Hildreth,* 387 F.2d 328, 329 (4th Cir. 1967). Conforme a la Regla Federal 609 (b), sin embargo, no puede admitirse evidencia de la comisión de un delito anterior de la naturaleza indicada si el delito se cometió o el acusado cumplió la condena, lo que fuese más tarde, más de diez años con anterioridad al proceso, a menos que el tribunal estime que el valor de la evidencia sobrepasa su efecto nocivo. En este último caso, el fiscal le tiene que notificar por escrito al acusado su determinación de intentar utilizar dicha evidencia de modo que goce de oportunidad debida para refutarla."

■ Nos inclinamos por una fórmula que armoniza con la norma que adoptamos en *Pueblo* v. *Dones,* supra. Si bien se permite impugnar la veracidad de un testigo con prueba de actos específicos vinculados a su credibilidad, incluyendo prueba de convicciones previas que impliquen deshonestidad o falso testimonio, tal tipo de prueba es inadmisible contra un acusado que declara como testigo a su favor a menos que previamente se determine por el juez, en interés de que se haga justicia, que su valor probatorio, considerados los hechos y circunstancias presentes, es sustancialmente mayor que su efecto perjudicial. En casos vistos ante jurado, tal determinación deberá hacerse fuera de su presencia, y el jurado no deberá conocer dicha prueba hasta tanto se haya resuelto que

es admisible. Cuando así fuere, deberá instruirse oportunamente al jurado que este tipo de prueba deberá ser considerada al fin exclusivo de determinar la credibilidad del testigo y no como indicio de su culpabilidad. Tal prueba será inadmisible si los actos específicos o convicciones fueren remotos. Debe considerarse remota toda convicción que en la fecha del juicio tuviere más de diez años, o si hubieren transcurrido más de diez años desde la excarcelación del testigo de la reclusión impuesta por la convicción, lo que fuere posterior.

Habiendo ocurrido la previa convicción del aquí apelante nueve años antes del juicio, y careciendo el expediente ante nos de datos que nos permitan determinar el efecto que el conocimiento de ello pudo tener en el fallo del jurado, *procede que revoquemos la sentencia apelada y ordenemos la celebración de un nuevo juicio.*(4) *Se dictará sentencia de conformidad.*

El Juez Asociado Señor Díaz Cruz disintió con opinión a la cual se une el Juez Asociado Señor Rigau. El Juez Asociado Señor Martín disintió en opinión separada.

—O—

Opinión disidente emitida por el Juez Asociado Señor Martín.

San Juan, Puerto Rico, a 30 de noviembre de 1978

Disiento. El Art. 158 de la Ley de Evidencia permite que un testigo sea tachado por la parte contra quien fuere llamado con prueba de que fue convicto anteriormente de delito grave. 32 L.P.R.A. sec. 2150. Tal convicción puede probarse mediante el examen del testigo o la anotación de la sentencia.

---

(4) Para la fecha de esta opinión ya han transcurrido más de diez años desde la convicción anterior del apelante por el delito de hurto. Esto, sin embargo, no será óbice para que dicha previa convicción sea admisible en el nuevo juicio que aquí disponemos—salvo, por supuesto, los otros criterios de admisibilidad que hemos indicado—toda vez que en la fecha del juicio por el caso de falsificación motivo de esta opinión aún no había transcurrido el plazo de diez años.

La opinión del Tribunal limita el alcance de dicha disposición legal a prueba de convicciones por delito grave que implique falta de honradez o perjurio por entender que así lo resolvimos en *Pueblo* v. *Dones*, 102 D.P.R. 118 (1974).

Una breve reseña de la situación que hubimos de confrontar en el caso de *Dones* permitiría poner en su justa perspectiva la cuestión de derecho allí resuelta. El acusado Dones apeló ante este Tribunal de una convicción, basada sólo en el testimonio de un agente encubierto, por tres infracciones a la Ley de Narcóticos con una condena de 10 a 18 años de presidio en cada cargo. Señaló el acusado como error el rechazo por el tribunal de instancia de cierta evidencia presentada por la defensa para impugnar la credibilidad del agente encubierto.

La evidencia rechazada consistía de:

"actos en que éste [el agente Pablo N. Padilla] había acusado falsamente a otra persona por venta y posesión de drogas, en cuyo juicio se produjo una fuerte reprimenda del juez que presidía la vista imputando al referido agente los delitos de perjurio y malversación de fondos del Estado; el informe de la investigación practicada por el Cuerpo de Investigación Criminal sobre dicha conducta del agente; testimonios de dos jueces superiores ante quienes dicho agente había mentido en juicio; y la declaración de un tercer juez superior sobre otros actos de mendacidad y falsedad del referido agente encubierto."

Toda vez que el juez de instancia entendió que sólo podía admitir prueba de mala reputación pero no de hechos aislados, decidimos examinar el Art. 158 de la Ley de Evidencia cuyo texto es el siguiente:

"Un testigo podrá ser tachado por la parte contra quien fuere llamado, mediante evidencia contradictoria o de que su reputación en cuanto a veracidad, honradez o integridad es generalmente mala, pero no con evidencia de determinados actos reprobables, salvo que podrá probarse mediante el examen del testigo, o la anotación de la sentencia, que fue convicto de delito grave."

Al interpretar el lenguaje del Art. 158 de la Ley de Evi-

dencia que permite tachar un testigo mediante evidencia "de que su reputación en cuanto a veracidad, honradez o integridad es generalmente mala, pero no con evidencia de determinados actos reprobables" citamos el criterio moderno relativo a las normas de pertinencia y función moderadora de la discreción judicial expresado originalmente en *Territory* v. *Chávez*, 8 N.M. 528, 531; 45 Pac. 1107, 1108 (1896), y citado con aprobación por Wigmore en su más reciente edición al efecto de que:

". . . no podrá librarse al testigo de revelar su propio carácter bajo contrainterrogatorio, y a tales fines podrá ser interrogado sobre actos específicos y sucesos de su vida pasada; y si no fueren muy remotos en tiempo y estén claramente vinculados a su credibilidad en un aspecto importante y pertinente [*relevant*], constituiría error excluirlos."

En consonancia con lo anterior expresamos en *Dones* que el procedimiento criminal evoluciona hacia la presentación cabal, franca y completa de los hechos que ha penetrado notablemente en el sistema de enjuiciamiento civil y añadimos:

"Todo acusado que tiene su libertad en peligro debe tener al alcance de su mano los medios más amplios para demostrar que su acusador es un truhán, falto de integridad e indigno de crédito. Mientras más cortapisas y restricciones se opongan a esta prueba, mayor es el riesgo de que un testimonio mendaz y falso prevalezca en corte adulterando y deshonrando la justicia, convirtiendo el fallo judicial en trágico producto elaborado de la perversidad." A las págs. 122–123.

Al concluir en *Dones* que el tribunal de instancia cometió error al rechazar la evidencia ofrecida por la defensa para impugnar la credibilidad del testigo ordenamos la celebración de un nuevo juicio.

En *Dones*, a mi juicio, no interpretamos la última parte del Art. 158 de la Ley de Evidencia que permite tachar a un testigo mediante evidencia de convicción de delito grave. Allí no se intentó traer prueba alguna sobre convicción por delito grave del testigo y ni siquiera por delito menos grave. La

prueba rechazada se refería a actos específicos que afectaban su veracidad, honradez, integridad o móviles, los que consideramos a la luz de los Arts. 21, 34, 35 y 158 de la Ley de Evidencia interpretados integralmente y establecimos que el contrainterrogatorio del testigo podría referirse a antecedentes o hechos específicos vinculados a la credibilidad, si no fueren remotos, permitiéndose presentar evidencia extrínseca de los mismos para impugnar la veracidad del testigo. Véase pág. 124. Añadimos en *Dones* que, además, "podrá presentarse, a los expresados fines, evidencia de convicción del testigo por delito que sin importar su calificación implique deshonestidad[1] o perjurio." En otras palabras, no solamente permitiríamos prueba sobre antecedentes y hechos específicos vinculados a la credibilidad, que no necesariamente indicaran reputación generalmente mala en cuanto a veracidad, honradez o integridad, sino que permitiríamos evidencia de convicción por cualquier delito, grave o menos grave, que implicara falta de honradez o perjurio.

Debe admitirse que por muchos años se ha intentado modificar, sin éxito apreciable, la regla de evidencia equivalente a nuestro Art. 158, que existe en casi todas las jurisdicciones estatales en Estados Unidos, a través de escritos de varios comentaristas del Derecho,[2] por el Código Modelo de Evidencia[3] y por las Reglas Uniformes de Evidencia.[4] Un último intento produjo la formulación de la Regla 609 de

---

[1] "Deshonestidad" es una traducción literal del inglés. El término correcto debe ser "falta de honradez o de integridad." Honestidad, según el *Diccionario de la Real Academia Española*, ed. 1970, es compostura, decencia y moderación en la persona, acciones y palabras; recato, pudor; urbanidad, decoro o modestia. Deshonestidad es, por tanto, la ausencia de dichos atributos.

[2] Véase Spector, *Impeachment Through Past Convictions: A Time for Reform*, 28 De Paul L. Rev. 1, 3, escolio 6 (1968). Para una discusión sobre soluciones e impedimentos a la reforma, véase 19 Hastings L.J. 925–929.

[3] Model Code of Evidence, Rule 106 (1942).

[4] Uniform Rules of Evidence 21 (1953).

las Reglas Federales de Evidencia. 10 Moore, *Federal Practice*, § 609.01 [1.–11].

El historial del trámite legislativo resulta interesante al revelar las diferentes propuestas de reforma que tuvo ante sí el Congreso. Primeramente, la versión del Tribunal Supremo que permitía la utilización de convicciones previas para tachar al testigo si el delito fuese grave o menos grave entendiéndose que siendo menos grave implicara falta de honradez o perjurio. La versión de la Cámara, por otro lado, admitiría convicciones previas si el delito, bien fuere grave o menos grave, implicara falta de honradez o perjurio. Luego el Senado propuso que la credibilidad del testigo pudiera ser tachada si el delito (1) fuere castigable por muerte o prisión en exceso de un año conforme la ley bajo la cual fuere convicto o (2) implicare falta de honradez o perjurio, sin importar la pena. *Id.* § 609.01 [1.–13].

Al llegar al Comité de Conferencia de ambas cámaras, éste adoptó una enmienda a la modalidad (1) para leer como sigue: ". . . si el delito fuese castigable por muerte o prisión en exceso de un año conforme la ley bajo la cual fue convicto y la corte determina que el valor probatorio de la convicción sobrepasa el efecto perjudicial al acusado." *Id.* § 609.01 [1.–14].

La Regla 609 fue finalmente aprobada por el Congreso siguiendo los lineamientos del Comité de Conferencia, de suerte que a los fines de tachar la credibilidad de un testigo, sea éste un acusado o un testigo cualquiera, podrá éste ser contrainterrogado sobre una convicción previa si el delito previo acarrea pena de prisión en exceso de un año y la corte determina que el valor probatorio de admitir tal evidencia sobrepasa el efecto perjudicial al acusado.

Si fuéramos a adoptar la regla federal mencionada al caso de autos en el que el acusado de falsificación fue convicto antes de hurto mayor, tendríamos que enmarcar el delito anterior bajo la modalidad (2) que se refiere a delitos que im-

pliquen falta de honradez o perjurio, irrespectivamente de su clasificación. El delito de hurto mayor, a mi entender, implica "falta de honradez" en el obrar.

La modificación que propone el Comité de las Reglas de Evidencia de la Conferencia Judicial(5) a nuestro Art. 158 permitiría tachar la credibilidad de un testigo con prueba de una convicción anterior por un delito que "independientemente de su clasificación, envuelve deshonestidad [*sic*] o falso testimonio." Aun enmarcando el delito de hurto mayor, objeto de impugnación en el caso de autos, bajo la definición de la regla propuesta, tendríamos que llegar a la conclusión que el delito de hurto mayor implica falta de honradez (deshonestidad).(6) En todo caso, la prueba de convicción anterior del delito de hurto mayor sería admisible.

Aún más, el claro texto del Art. 158 no admite otra interpretación que una vez se prueba una convicción anterior de un delito grave queda tachada la credibilidad de un testigo, aun siendo éste el acusado, ya que el precepto legal no distingue entre un testigo cualquiera y el acusado que opta por declarar.

En vista de lo anterior, confirmaría la sentencia apelada.

—O—

Opinión disidente del Juez Asociado Señor Díaz Cruz a la que se une el Juez Asociado Señor Rigau.

San Juan, Puerto Rico, a 30 de noviembre de 1978

El apelante, convicto por un jurado del delito de falsificación, fue sentenciado a reclusión por término de cinco a diez

---

(5) A varias semanas plazo de la Conferencia Judicial que habrá de considerar la revisión de las Reglas de Evidencia en forma integral preferiría oír las opiniones de los jueces, fiscales y abogados que habrán de participar antes de sentar una norma forzada sobre una regla existente.

(6) En los comentarios del Comité de Conferencia sobre la Regla Federal 609 se expresa que la frase "falta de honradez y perjurio" comprende delitos tales como perjurio o incitación al perjurio, declaración falsa, fraude criminal, desfalco o falsa representación, o cualquier otro delito de

años. En su apelación imputa error al Tribunal Superior por haber permitido al fiscal que impugnara su credibilidad en el contrainterrogatorio confrontándole con una previa convicción por delito de hurto mayor (¹) sin que el acusado hubiese en su testimonio directo ofrecido prueba de ser persona veraz, o de otro modo "abierto la puerta" a prueba de reputación. *Pueblo* v. *Archeval*, 74 D.P.R. 512, 516 (1953). La insistencia en hacer doctrina en este caso que no muestra los extremos de crueldad de otros, resulta en inmerecido alivio para los peores infractores del orden.

La mayoría ha quedado rezagada en el tiempo. Con la aparición del nuevo tipo de criminal totalmente deshumanizado, insensible al bien intencionado esfuerzo de la sociedad para reformarlo, las más avanzadas y liberales sociedades del mundo occidental retornan a la severidad de la pena en los casos extremos en puro ejercicio de legítima defensa. No creo que haya jurisdicción que ofrezca más garantía que la nuestra al derecho del acusado a un juicio imparcial y objetivo, (²)

---

naturaleza de *crimen falsi*, la comisión de los cuales envuelva algún elemento de engaño, falta de veracidad, o falsificación que refleje la propensión de un acusado a declarar falsamente. En esta jurisdicción no se ha atribuido un significado concreto a dicha frase. Es de esperarse que algunas guías surjan de las discusiones en la Conferencia Judicial.

(¹)*Pueblo* v. *Dones*, 102 D.P.R. 118 (1974), admite la impugnación de credibilidad mediante antecedentes de falta de honestidad, y falsedad. El hilo de deshonestidad que enlaza el primer delito de hurto con el segundo de falsificación es innegable.

(²)Art. II, Sec. 11 de la Constitución del Estado Libre Asociado de Puerto Rico.

"En todos los procesos criminales, el acusado disfrutará del derecho a un juicio rápido y público, a ser notificado de la naturaleza y causa de la acusación recibiendo copia de la misma, a carearse con los testigos de cargo, a obtener la comparecencia compulsoria de testigos a su favor, a tener asistencia de abogado, y a gozar de la presunción de inocencia.

"En los procesos por delito grave el acusado tendrá derecho a que su juicio se ventile ante un jurado imparcial compuesto por doce vecinos del distrito, quienes podrán rendir veredicto por mayoría de votos en el cual deberán concurrir no menos de nueve.

"Nadie será obligado a incriminarse mediante su propio testimonio y el silencio del acusado no podrá tenerse en cuenta ni comentarse en su contra.

que no hay que adornar con blanduras, ni dislocar con refinados obstáculos a la gestión del ministerio público.

*Pueblo* v. *Dones*, supra, está incorrectamente interpretado en la opinión de mayoría. *Dones* abrió el campo para impugnar la credibilidad con actos no clasificados como delito grave (*felony*) pero dejó inalterada la tersa disposición de ley en el Art. 158 de la Ley de Evidencia (32 L.P.R.A. sec. 2150) que dice:

"Un testigo podrá ser tachado por la parte contra quien fuere llamado . . . [y] podrá probarse mediante el examen del testigo, o la anotación de la sentencia, que fue convicto de delito grave."

Ahora la mayoría acuerda una derogación vía jurisprudencia de esta disposición a menos de 2 meses de la Conferencia Judicial que habrá de considerar este Art. 158 como Regla 788, a la pág. 120 del Informe del Comité de Reglas de Evidencia que básicamente sigue la Regla 609 Federal. Se adopta una norma cuya final consecuencia es hacer más difícil para el Estado el encausamiento de incorregibles y para ello la mayoría se anticipa a la Conferencia Judicial, se constituye en Legislatura y deroga el Art. 158 (32 L.P.R.A. sec. 2150) de la Ley de Evidencia que ordena:

"Un testigo podrá ser tachado por la parte contra quien fuere llamado, mediante evidencia contradictoria, o de que su reputación en cuanto a veracidad, honradez o integridad es generalmente mala; pero no con evidencia de determinados actos reprobables, salvo que podrá probarse mediante el examen del testigo, o la anotación de la sentencia, que fue *convicto de delito grave*." (Énfasis nuestro.)

---

"Nadie será puesto en riesgo de ser castigado dos veces por el mismo delito.

"Todo acusado tendrá derecho a quedar en libertad bajo fianza antes de mediar un fallo condenatorio.

"La detención preventiva antes del juicio no excederá de seis meses. Las fianzas y las multas no serán excesivas. Nadie será encarcelado por deuda."

Ante el explícito texto de la ley, restringir la revelación de antecedentes penales de un acusado que se sienta a declarar, es tender una cortina de secreto que aisle al jurado de la verdad y le mantenga ignorante del carácter del sujeto que juzga. De paso convierte al reincidente en acusado privilegiado porque cada vez que haya de responder en juicio de su más reciente felonía, renovará el nimbo de principiante en la vil faena de pisotear todas las libertades de su prójimo, con oportunidad de granjearse con el jurado la simpatía o la compasión que pueda merecer un historial sin mancha. No hay trato justo ni para la sociedad ni aun para los sujetos de primera experiencia penal, en ocultar al jurado mediante conspiración de silencio, la auténtica fibra del ofensor impenitente.

La conclusión y resultado final de la opinión de mayoría es que si el acusado no da el consentimiento "abriendo la puerta" no podrá tachársele ni aun con la restringida norma de *Pueblo* v. *Dones*, supra, que limita la prueba de impugnación de credibilidad a antecedentes y convicciones de delito grave, o menos grave que impliquen deshonestidad o perjurio. A través de su labor creadora de preciocismo procesal, la opinión desemboca en la expedición de nuevas e intocables credenciales para cada juicio seguido al infractor contumaz.

La mayoría no hace otra cosa que incorporar en su esencia la Regla 108 del Proyecto de Reglas de Evidencia de 1958 que fueron sometidas a la Asamblea Legislativa y desaprobadas sucesivamente en 1958, 1959, 1960 y 1961. Práctica Forense, Evidencia, Tomo 3, pág. 121. Edición Equity 1964. En los últimos veinte años esta Regla se ha desconectado de la circunstancia y el medio en que habría de operar. Los nuevos e implacables infractores de la ley decretaron su obsolescencia.

Dispone la rechazada Regla 108:

*Impugnación del acusado como testigo*

"No se podrá ofrecer evidencia sobre la comisión de un delito por el acusado que declara en el juicio, o sobre su convicción por

un delito, ni se podrá contrainterrogarle sobre el particular con el único fin de atacar su credibilidad, si el acusado no ha producido antes evidencia con el solo fin de sostener su credibilidad. Si el acusado ha traído evidencia con el fin único de sostener su credibilidad, se podrá admitir en su contra cualquier evidencia admisible bajo la Regla 106."

No veo justicia en ocultar al jurado la conducta ignominiosa del acusado mientras la reputación de éste sea elemento relevante en la estimación de la prueba. Cada hombre es en gran medida arquitecto de su vida y responsable de sus actos y por su libérrima voluntad se hace de una hoja de conducta limpia o turbia que no debe dejar fuera, como quien se quita una capa, al entrar a la sala de justicia. Pierde objetividad el sistema que da igual tratamiento al que delinque por primera vez y al que reincide en su conducta criminosa.

La situación que este caso presenta no es comparable con la exclusión de prueba de delito subsiguiente si el acusado admite y acepta antes del juicio la existencia de una primera convicción (Regla 68 de Procedimiento Criminal).[3] Allí se sigue un balance de reciprocidad y si admite la alegación de subsiguiente, y con ello la posibilidad de una pena fuerte en caso de veredicto de culpabilidad, podrá guardar su secreto ante el jurado. En el caso de autos el acusado nada cede ni expone; insiste simplemente en suprimir sus antecedentes y así desviar fundamentalmente la inclinación del jurado al pasar juicio sobre su culpabilidad o inocencia. Con este criterio coincide la Corte Suprema de California que al sostener la constitucionalidad de la norma y comentar su efecto de su-

[3] Regla 68, Procedimiento Criminal

"Cuando la acusación imputare un delito en grado de reincidencia o subsiguiente o delincuencia habitual, el acusado podrá, al momento de hacer alegación, o en cualquier ocasión posterior siempre que fuere antes de leerse la acusación al jurado, admitir la convicción o convicciones anteriores y, en tal caso, no se hará saber al jurado en forma alguna la existencia de dicha convicción o convicciones."

primir la declaración del acusado por temor a ser impugnado con previas convicciones, ha dicho: "No vamos a alentar o tolerar el chantaje por los acusados. Ningún testigo, incluyendo al acusado que opta por declarar en su propio interés, tiene derecho a una falsa aureola de veracidad." *People* v. *Beagle*, 6 Cal. 3d 441 (1972); Sup., 99 Cal. Rptr. 313.

El acusado que elige declarar puede ser impugnado como cualquier otro testigo, y su previa convicción por delito grave puede demostrarse para atacar su credibilidad. Wharton, *Criminal Evidence*, Vol. 2, sec. 481 (1972), pág. 450. La regla se mantiene como principio rector aun después de reexamen crítico por algunas jurisdicciones. Wigmore, *On Evidence*, Vol. 3A, sec. 890 (1970), pág. 654.